# Keeler's Adoption.

*Parent and child—Adoption—Consent of mother—Setting aside decree.*
A decree of adoption of a child taken from a home, will be set aside where it appears that the mother had no notice of the proceedings; was not present in court; was at the time requesting the return of her child, although she had previously signed a paper releasing her rights in the child to the home, and assenting in general language to the adop-

tion of the child, but not by any particular person; and that the petitioner for the adoption, although knowing the mother's desire, had not revealed it to the court.

Argued Nov. 19, 1912. Appeals, Nos. 51 and 52, Oct. T., 1912, by James T. Sweeney, from decree of C. P. Delaware Co., March T., 1910, No. 209, vacating decree of adoption in re Adoption of Charlotte E. Keeler. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Petition to vacate decree of adoption.

BROMALL, J., filed the following opinion:

On April 23, 1910, the petition of James T. Sweeney was presented to this court, praying for a decree adopting Charlotte E. Keeler as his child. The averment of this petition upon which the jurisdiction of the court was invoked, was this: "That the mother of the said child has, for some cause, neglected and refused to provide for it for over one year last past." The proofs submitted in and with the petition to dispense with consent of parents were that the child was an illegitimate child whom the mother in pursuance of her abandonment of it had committed to the St. Vincent's Home and Maternity Hospital, Philadelphia, in September, 1909, and this institution was treated as the quasi parent who had notice of the proceeding. It now appears by the proofs presented that the real state of the facts was not made known to the court. The facts are these. About May 18, 1908, the mother, Lillie M. Keeler, went to the Home to be delivered of this child, which was born on July 30, 1908. About August 12, 1908, the mother left the Home, leaving the child in the care of that institution. In April, 1909, the mother took the child away from the Home. The mother was married in June, 1909. Her husband was not the father of the child. On July 28, 1909, the mother took the child back to the Home in pursuance of information that there was a person who contemplated taking a child for adoption, and who would

take this child if it were satisfactory. The mother left the child and bid it good-by. On the same day the institution passed the child to James T. Sweeney under probation, with a view to ultimate adoption. The mother then left the state and went to the city of Washington to get employment. The husband whom she had married did not contribute to her support. Shortly afterward she regretted the separation from her child and communicated this information to the institution. Seeing that she was vacillating about the separation from her child, the institution sent to her a paper for her signature, which was signed in September, 1909. This paper is as follows: "Finding my situation in life wholly unfitted for the proper bringing up and education of my infant child, and considering its future welfare, I hereby give and surrender the same to the future care and keeping of the Sisters of Charity, Seventieth street and Woodland avenue, and I hereby promise and agree not to interfere with it or them in the proper care and education of the said infant, nor with any one to whom the Sisters may hereafter confide the said child for adoption and faithfully carries out my intention of having it brought up in a good Christian family." After signing this paper, the mother still continued to be regretful, but she was persuaded to abstain from taking any steps toward the reclamation of the child until after the birth of another expected child, which was born in March, 1910. Prior to November 16, 1909, James T. Sweeney was informed as to the attitude of the mother toward this child, Charlotte E. Keeler. On November 18, 1909, the mother wrote to the institution to the effect that if she should die in her expected confinement, the child would remain permanently with its foster parents, but if she should recover she would reclaim the child. Accordingly about April 8, 1910, she wrote to the institution that she was coming for the child, and this letter, upon its receipt, was sent to James T. Sweeney. Under these circumstances, the petition of James T. Sweeney was signed and sworn to by him on April 19, 1910. The

mother, learning that resistance would be made to her obtaining the child, came to Philadelphia and employed a lawyer, who informed James T. Sweeney of the purpose of the mother prior to the decree of adoption. On April 22, 1910, a paper was executed by the Home, of which the following is a copy: "Pursuant to the terms of a certain paper heretofore executed by Lillie M. Keeler, we hereby confide unto James T. Sweeney the custody of the said child absolutely for the consideration that the said James T. Sweeney maintain, clothe and educate the child during the period which it shall be unable to do so for itself, and by this instrument do transfer and set over to the said James T. Sweeney all our rights, title and interest in the said child, either by reason of the paper heretofore executed by the said Lillie M. Keeler, or by reason of the fact that she gave the child to the undersigned."

It is manifest from the foregoing recital of the facts that if they had been made known to the court no decree of adoption would have been made. Such decree of adoption could only be made in the words of the Act of May 19, 1887, P. L. 125, "with the consent of the parents or surviving parent of such child, or if the father or mother from drunkenness, profligacy or other cause shall have neglected or refused to provide for his or her child or children for the period of one year or upwards proven to the court, with the consent of the nonneglecting father or mother alone, or if none of the next friend of such child or of the guardians or overseers of the poor, or of such charitable institution as shall have supported such child for at least one year." If the statutory conditions do not exist the court has no jurisdiction to make a decree of adoption: Bastin's Adoption, 10 Pa. Superior Ct. 570; Luccareni's Adoption, 13 Pa. Dist. Rep. 782; Smith's Adoption, 14 Pa. Dist. Rep. 769. And such decree will be revoked: Sleep's Adoption, 6 Pa. Dist. Rep. 256. In the absence of consent of parent, or if imposition be practiced, the decree will be set aside: Booth v. Van Allen, 7 Phila. 401. It is quite evident that

this decree of adoption was procured for the purpose of fortifying the petitioner in his effort to prevent the mother from getting her child. The averment of the petition that the mother had for some cause neglected and refused to provide for it for over one year last passed was untrue, and was known to the petitioner to be untrue. It is manifest that this decree cannot be allowed to stand, and it is, therefore, ordered, adjudged and decreed that the decree of this court of April 23, 1910, be vacated and annulled with costs to the petitioner to be paid by the respondent.

*Error assigned* was the decree of the court.

*John E. McDonough*, for appellant.—Attached to the petition for adoption was the surrender paper signed by the mother of this child. The legal effect of this paper was not described in the petition. It was not considered necessary to do so. It was contended there and is contended here, that, associated with the other allegations in the petition, there was ample jurisdiction for this decree on both branches of the case: Luccareni's Adoption, 13 Pa. Dist. Rep. 782, the record did not show the consent of the parent. In this case the record does show the consent of the parent. In support of the contention that the consent of the parent must be as of the time of the adoption, Bastin's Adoption, 10 Pa. Superior Ct. 570, is cited. In this case the parent died between the time he signed the consent and the time the decree of adoption was made.

Of course, if there was no parent at the time the decree was made, there was no consent of the parent, but in this case there was a parent who was living and whose consent actually appeared in the petition filed.

If this decree can be set aside, then it is difficult to concede how it is possible to legally adopt a child in Pennsylvania unless the record show the consent of the parent personally in court and inasmuch as many of the adopted children in Pennsylvania are illegitimate, it would utterly

be impracticable to have their maternal parents come into the court of justice and there publicly proclaim their moral delinquencies.

*William I. Schaffer,* with him *William A. Gray,* for appellee.—There was no such consent to the adoption as is contemplated and required by the act: Carroll's Est., 219 Pa. 440; Luccareni's Adoption, 13 Pa. Dist. Rep. 782; Smith's Adoption, 14 Pa. Dist. Rep. 769; Bastin's Adoption, 10 Pa. Superior Ct. 570.

The act contemplates a direct consent of the parent to the actual adoption under consideration by the court: Bastin's Adoption, 10 Pa. Superior Ct. 570.

The present case in its facts comes squarely under the decision in the almost precisely similar case of Sleep's Adoption, 6 Pa. Dist. Rep. 256.

The decree should be vacated because the consent, if consent was given, had been revoked at the time of the adoption proceedings: Bastin's Adoption, 10 Pa. Superior Ct. 570.

The decree of adoption should be vacated because of the concealment from the court of facts material and vital to the proceeding: Booth v. Van Allen, 7 Phila. 401; Cochran v. Eldridge, 49 Pa. 365.

OPINION BY ORLADY, J., February 27, 1913:

On April 23, 1910, James T. Sweeney presented his petition praying for the adoption of Charlotte E. Keeler, an infant. Attached to the petition was a printed blank—without date—but signed by Lillie M. Keeler—the mother of the child—and given to James T. Sweeney, by the sisters of charity who surrendered the child to him. The court ordered and decreed that "James T. Sweeney is to adopt the said Charlotte E. Keeler, and that the said child is to assume the name of the said James T. Sweeney, and have all the rights of a child and heir, and be subject to the duties of a child of the said James T. Sweeney, and that she and they shall respectively inherit from and

through each other as if she had been the lawful child of the said James T. Sweeney."

On June 18, 1911, Lillie M. Keeler, the mother of the infant filed in the same court a petition for the vacation of the decree of the adoption and for a writ of habeas corpus. The rule was granted, testimony taken, a hearing had, and on February 27, 1912, the decree of 1910 was vacated and annulled.

The opinion filed by the learned judge who entered the decree vacating the earlier one of the court, sets out at length all the facts of the case, and held, that, for the reasons therein given the court was without jurisdiction in making the decree of adoption.

It is apparent that each of these contestants is moved by the highest impulses, and actuated solely by their affection for this child, and it is as manifest that the St. Vincent's Home and Maternity Hospital in Philadelphia, where the child was born on July 3, 1908 while the mother was there as a charity resident, is entirely free from the slightest suggestion of wrongdoing, and has carefully avoided participating in this controversy by favoring either of the contestants. As stated in Carrol's Est., 219 Pa. 440: "The only methods of adoption of children known to the law of Pennsylvania are those prescribed by the Act of May 4, 1855, P. L. 430, sec. 7, after re-enactment by the Act of May 19, 1887, P. L. 125, sec. 1, and the Act of April 2, 1872, P. L. 31, sec. 2. The former provides for adoption by petition to, and decree of, the court of common pleas; and the latter for adoption by deed duly executed and recorded. There is no authority in this state for adoption by parol: Hughes's Est., 225 Pa. 79. This proceeding was intended to be instituted in accordance with the provision of the act of 1887, and being statutory, its requirements must be followed in order to give the court jurisdiction. The act contemplates a proceeding in court after all parties interested have had due notice, and who are to satisfy the court that the welfare of the child will be promoted by such adoption. The assent of

the parties mentioned in the act in giving or waiving a right should affirmatively appear. Statutes authorizing adoption are in derogation of the common law, yet their construction should not be narrowed so close as to defeat the legislative intent, Brown's Adoption, 25 Pa. Superior Ct. 259, in which case we refused to disturb a decree for reasons particularly set out in the opinion by RICE, P. J., but they in no way affect the necessity for parental consent to the adoption.

The appellee's answer recites: "It is true that there was brought to his attention some time in November (1909) that the mother might want to reclaim the child, but there was nothing definite to this information until some time in April, 1910, when your respondent was advised that his legal right to obtain possession could only be accomplished by legal adoption, and that such a decree could be entered upon the paper which was signed by Lillie M. Keeler." This paper was signed in September, 1909, and is set out at length in the opinion of the court. With the positive knowledge that the mother did not consent to the adoption of her child by any person and was at the time in correspondence with the St. Vincent Home requesting permission to repossess it; the petition in this was presented and the decree secured, without the court being informed of the actual and vital facts of the case. The motive prompting this action was undoubtedly a good one, but the rights of the mother are superior to that of a stranger, and her consent was necessary before such a decree can be held valid. The petitioner evidently so regarded it. It may be well that the court was not designedly imposed on by the petitioner, and he took a chance on the subsequent ratification by the mother. However, the petitioner suppressed a fact, which if known by the court, would have prevented the decree, and he is not now in position to complain of a decree which would have been entered had the whole truth been exhibited at the time it was entered. No court of justice will set aside or even be led to look into a solemn judgment on light or trival ground; but when

it is alleged upon adequate proofs that a judgment in whole or in part has been obtained by a suppression of truth, which it was the duty of the party to disclose; or by the suggestion of a falsehood or by any of the infinite and therefore indefinable means by which fraud may be practiced, no court will allow itself, its records, and the process of law to be used as instruments of fraud: Cochran v. Eldridge, 49 Pa. 365. While there is no suggestion of designed or actual fraud, as such, in this case, it was clearly a legal fraud on the court to suppress the jurisdictional facts and for that reason the decree was invalid, and the. same court had ample authority to vacate the decree it had erroneously entered: Fisher v. Ry. Co., 185 Pa. 602.

The decree is affirmed in both appeals.