## Phillips Adoption

*Shaner, Heckman & Barbera,* for petitioners.
*Archibald M. Matthews,* for respondent.

LANSBERRY, P. J., September 6, 1957.—In this proceeding for vacation or annullment of three separate decrees of adoption, the pleadings consist of a petition alleging fraud in the procuring of the decrees of adoption and a responsive answer by the adopting father denying the allegations of fraud. The petitioners are the Rev. and Mrs. Clair E. Keafer who were instrumental in the placing of the three children with Mr. and Mrs. Phillips for adoption by them. The matter came on for hearing by the court at which hearing unusual latitude was allowed in the reception of testimony because of the nature of the allegations.

An understanding of the issue here presented requires a background resumé of the early married life of the principal parties, Mr. and Mrs. Irvin Leroy Phillips, references to the adoption proceedings and

the basis for the allegation of fraud. On September 10, 1937, Irvin Leroy Phillips, then aged 22 years and an electrical engineering student in the senior class at the University of Pittsburgh and Marian Virginia Pillmore, then aged 18 years, were quietly married in Hagerstown, Md. Thereafter Mrs. Phillips lived with her widowed mother in Pittsburgh while Mr. Phillips completed his studies at the university, after which time the fact of the marriage was publicly revealed. At his request, Mrs. Phillips then lived with his grandparents in Conemaugh, Cambria County, for a period of several months and then the parties lived in their own apartment approximately one year. Thereafter they lived in Grantsville, Md., and vicinity for more than a year and then for several years with his grandfather's widow. The parties later resided in the Oakhurst Housing Development near Johnstown for several years during most of which time Mrs. Phillips worked as a nurse's aid while Mr. Phillips was employed at the Pennsylvania Electric Company. In the spring of 1945 the parties had marital differences, Mrs. Phillips left her husband, went to New Alexander, Pa., and resided with her mother and during that time filed her complaint in divorce in Allegheny County in the July term of 1945. Soon thereafter the parties reconciled their differences, the action in divorce was withdrawn and the parties returned to the Oakhurst Housing Development where they resided for a while and from thence moved to the home purchased by them in their joint names in northern Somerset County and in which home they were residing when this proceeding as well as the divorce, custody and support proceedings were instituted in the courts of Somerset County by Mrs. Phillips.

Sometime during the year 1946 or early 1947, through a mutual friend, Mr. and Mrs. Phillips be-

came acquainted with the Rev. and Mrs. Clair E. Keafer, presently residing at Berwick, Pa., through whose efforts two children were placed with the Phillips for adoption after some investigation made by the Rev. and Mrs. Keafer. By proceedings had to no. 7 of 1949 in the Orphans' Court of Somerset County, Linda Jane Phillips, born April 17, 1947, and by proceedings had to no. 6 of 1949 in the Orphans' Court of Somerset County, Carl Irvin Phillips, born April 19, 1948, became the adopted children of Mr. and Mrs. Phillips by separate decrees of adoption entered March 7, 1949. Although a transcribed record of the testimony adduced at those hearings does not appear to have been made, from the available records of these adoption proceedings and the testimony in this record it appears that full hearings were had, that the proceedings were regular in all respects and agreeable to the Act of Assembly regulating adoptions then in force. In rather lengthy decrees of adoption entered by the Hon. Norman T. Boose, then president judge of this court, the basic facts are recited, the necessary consents (which are on file) are referred to and the formal adoptions together with changes of names are decreed.

By proceedings had to no. 20 of 1953 in the Orphans' Court of Somerset County, David James Phillips, born January 6, 1953, became the adopted child of Mr. and Mrs. Phillips by decree of adoption entered July 27, 1953. The testimony adduced at that hearing was reduced to writing and all of the basic facts are recited and found therein, the necessary consent filed and the formal adoption together with the change of name decreed. This child, like the other two, was brought to the attention of Mr. and Mrs. Phillips by the Rev. and Mrs. Keafer and by them placed for adoption. These children are not related by blood so far as the adoption records disclose.

With reference to all three adoptions, the fact is that the early marital difficulties between these parties and the fact of the institution of the divorce action in 1945 and the subsequent withdrawal thereof and resumption of the marital relationship were not revealed to or learned by either the Rev. and Mrs. Keafer, the witnesses at the adoption hearings, or either of the presiding judges who entered the decrees of adoption. Not until 1955 did the Rev. and Mrs. Keafer learn these facts, and, following their consultations with the parties and as a result of subsequent investigations, instituted this proceeding to revoke or annul the three decrees in adoption.

In their petition, Clair E. Keafer and Iva Keafer, after reciting the facts relating to the adoptions, alleged the following:

"FIFTH: That sometime ago your Petitioners learned that the said adopting parents had committed fraud upon the Court at the time of the adoption proceedings in that neither the Court nor their reputation witnesses nor your Petitioners were informed that the said adopting parents had had domestic trouble from the date of their marriage, which became so intense that a divorce proceeding was entered in the Courts of Allegheny County, but later dropped. That such domestic trouble between the adopting parents continued from that time on through till the date of the last adoption, to-wit: July 27, 1953, which said matters were carefully concealed by the adopting parties from their witnesses, your Petitioners and the Court.

"That since July 27, 1953, conditions have become worse and the difficulties arising between the adopting parents have resulted in an action in divorce being filed as of March 4, 1957; that desertion and non-support proceedings were instituted and heard in the

Courts of Somerset County, Pennsylvania, on the 16th day of April, 1957, which resulted in the Court of Quarter Sessions making an order on the said Irvin L. Phillips for the support of the wife and children in the sum of Two Hundred ($200.00) Dollars per month.

"That following said hearing the said Irvin L. Phillips, has, on the 16th and 17th day of April, 1957, conducted himself in a very disorderly manner, threatening violence, and to protect the children from said commotion, quarrelling and violence, the Court, on April 18th, 1957, ordered the children brought to the Children's Aid Society on proceedings instituted under the Juvenile Court Act; that due to the conduct of the said Irvin L. Phillips, one of the adopting parents, his wife, Virginia Phillips, the other adopting parent, has been compelled to withdraw from the home of the parties in Conemaugh Township, Somerset County, Pennsylvania, because of her fear for her health and life.

"SIXTH: That your Petitioners have visited in the home of the adopting parents at numerous times since the 27th of July, 1953, and have discovered the marital difficulties existing between the adopting parents, have advised the parents to behave in a manner suitable as parents and to not air their differences in the presence of the children, threatening his wife and abusing the children by whipping them with his belt.

"Because of the above facts and further since your Petitioners feel they are responsible for the welfare of the above named three minor children, and since conditions between the adopting parents have not improved, but are getting very much worse, believe that the Decrees of Adoption in the above entitled case should be revoked because of the fraud committed by the above named Irvin L. Phillips and Virginia Phillips upon your Petitioners, the reputation witnesses and your Honorable Court."

To this petition a responsive answer was filed by Irvin Leroy Phillips only in which he denied that any fraud had been committed upon the court by either Mrs. Phillips or himself, asserted that any marital difficulties between them had been satisfactorily settled prior to the entry of the decrees of adoption, that the Rev. and Mrs. Keafer had fully investigated the situation of their home before the adoptions and recommended the adoptions to the court; that there was by them, the Phillips, no concealment of any pertinent matter from the Keafers, the witnesses or the court; that the parties had no difficulties between them until the early part of 1957 and these difficulties were caused by the mother of Mrs. Phillips, that the allegations of his conduct since the nonsupport hearing were erroneus and untrue, that the reason for the placement of the children was the desire of Mrs. Phillips to be rid of them and freed of her responsibility to care for them and that Mrs. Phillips, in fact, abandoned the three children. Respondent further answered the petition by asserting the want of any right or standing in the Keafers to institute the proceedings, asserting his affection for the children and his arrangement for a housekeeper to care for them in their home provided for by him and that the Keafers had made arrangements for the further placing and adoption of the children. Respondent in his answer further asserted that he had contested the divorce action recently instituted by Mrs. Phillips in the hope of keeping the home together, but, following her alleged abandonment of the children and her assumed lack of interest in and affection for the children ceased defending the action in divorce.

On June 28, 1957, this matter came on for hearing on petition and answer at which time the petitioners, Mrs. Virginia Phillips, her mother Mrs. Ochsenhist, Mrs. Genevive Bittinger, one of the witnesses at the

third adoption hearing, respondent Irvin Leroy Phillips and Miss Thelma Kirker were fully heard. Although a large portion of the testimony had little or no pertinence to the present issue and more properly belongs to a consideration of the divorce, custody and nonsupport proceedings presently pending between these parties, we may now briefly summarize that testimony which is pertinent to this issue.

The Rev. Clair E. Keafer testified that after learning to know Mr. and Mrs. Phillips about 12 years ago and of their desire to adopt a child, he made an investigation of them and their home and as a result of that investigation placed the first child for adoption; that further investigation was made and a second child was placed for adoption; that irregular visits were made to the Phillips' home and, being satisfied that the home continued to be a desirable home and the Phillips continued to be desirable adoptive parents, he placed the third child for adoption in 1953; that not until November of 1955 did he learn of the previous domestic difficulties nor the institution of the divorce action in 1945; that during his investigation, he inquired if the Phillips had any marital difficulties and their response was in the negative, and that, in his opinion, the Phillips falsified the adoption records by failure to disclose the previous marital difficulties and divorce action; and that knowing these things, he, together with Mrs. Keafer, concluded to institute this proceeding for an annullment and cancellation of all three adoption decrees.

Mrs. Keafer corroborated her husband's testimony and like much of that of her husband referred to the numerous conversations between the Keafers and Phillips subsequent to November of 1955 which are not here specifically pertinent for the reason that those matters referred to the life of the parties subsequent to the adoption decrees.

Mrs. Phillips testified at some length as to the conditions in the home prior to and more particularly since the adoptions, stating that their marital difficulties began about a year following their marriage which included both physical and mental mistreatment by Mr. Phillips and culminated in her leaving their common home and instituting an action in divorce in Allegheny County in the spring of 1945 which was withdrawn several months later when a reconciliation and resumption of the marital status occurred. She testified that she told the Keafers during the investigations that they were getting along all right, being then of the opinion that if the Keafers knew the actual facts, "their chances of getting a child for adoption would be gone." According to Mrs. Phillips "things looked to be very favorable at the time of the adoption" and they were getting along well. Mrs. Phillips further testified that she was now willing that the adoption decrees be vacated on condition that the Keafers be allowed to place the children for adoption in another home they had recently selected in Harrisburg, Pennsylvania, her reason for this willingness being that she now recognized her "mistake in doing what she did knowing that this might possibly happen," apparently a reference to the failure to reveal their prior marital difficulties and a repetition of those differences and difficulties after the adoption decrees were entered.

Mrs. Ochsenhist, mother of Mrs. Phillips, testified briefly, the substance of her relevant testimony being a statement attributed to Mr. Phillips in which he said he never wanted the children, that it was Virginia's idea to have them and that he fooled both the Judge and the Keafers in this. This statement attributed to him was positively denied by Mr. Phillips later in the hearing.

One of the witnesses at the adoption hearing, Mrs. Genevive Bittinger, was called by the petitioners in this proceeding and testified that while she knew of the difficulties between Mr. and Mrs. Phillips prior to the adoptions, she was of opinion they were cleared up and the parties reconciled.

Mr. Irvin Leroy Phillips, the only respondent in fact, testified to various matters, much of which, like the testimony in behalf of the petitioners, is not relevant to the present issue. As to that which is relevant, he testified that at the adoption hearings no questions were asked regarding any marital difficulties nor as to the institution of the divorce action in 1945, that their troubles then were minor ones and that he did not then nor presently feel that anything was being withheld from the court in the adoption proceedings.

From the foregoing summary of the relevant testimony, it is manifest, and we may find as a fact, that prior to either of the adoption proceedings, these parties did have marital differences and an action in divorce was instituted and withdrawn after which the parties lived together and the further fact that these matters were not revealed to the court and were not known to these petitioners. We may now proceed to a consideration of the legal principles applicable.

Our first inquiry is the jurisdiction of this court to entertain the petition for revocation and the standing of the petitioners, the Rev. and Mrs. Clair E. Keafer in such proceeding.

There is no specific statute in Pennsylvania relating to the revocation of decrees of adoption nor does our present adoption statute contain any provisions therefor. The weight of authority is to the effect that even in the absence of specific statutes in some jurisdictions, courts granting decrees of adoption do have jurisdiction to revoke those decrees for good cause, the

proceeding being equitable in nature and the welfare of the child being a most important phase of the consideration by the court. In 2 C. J. S. Adoption of Children, 430 §42, the text writer states ". . . in the absence of a statutory provision placing a decree of adoption on a different footing than other judgments or orders, there is nothing in the nature of a decree of adoption to take away from the court granting it the power to revoke it and annul it upon sufficient grounds therefor."

To this same effect are the statements of the text writers in 1 Am. Jur. Adoption of Children, 672, §72. President Judge Trimble, of the Orphans' Court of Allegheny County, entertained this view in McKenzie's Adoption, 44 D. & C. 86, and our own appellate courts appear to have no doubt of this jurisdiction, having considered numerous appeals in proceedings for revocation of decrees of adoptions entertained by the lower courts in proper cases of which two cases are illustrative: Helen Frances Young's Adoption, 259 Pa. 573, and Keeler's Adoption, 52 Pa. Superior Ct. 516, in which case the true facts surrounding the apparent consent of the natural mother were not revealed to the court and in which case Judge Orlady concluded the opinion in these significant words:

"While there is no suggestion of designed or actual fraud, as such, in this case, it was clearly a legal fraud on the court to suppress the jurisdictional facts and for that reason the decree was invalid, and the same court had ample authority to vacate the decree it had erroneously entered: Fisher v. Ry. Co., 185 Pa. 602."

Decrees and orders revoking and annulling adoptions have been entered by our lower courts in numerous instances over many years: 2 Vale Pennsylvania Digest, Adoption, sec. 16. The broad rule applicable in contract cases is " 'The inherent right of a court to set

aside a contract for fraud is fundamental' " (McClellan Estate, 365 Pa. 401, 408) ; the rule should be no less in the consideration of an adoption decree. From these authorities it is apparent the jurisdiction of the courts of Pennsylvania to revoke and annul decrees of adoption in proper cases is undoubted.

May the petitioners here, the Rev. and Mrs. Clair E. Keafer, institute the petition for the revocation of the decrees of adoption? Counsel for respondent Irvin Leroy Phillips contends they are not proper parties to petition for such an order. With this contention we do not agree. It must be noted that the proceeding is of an equitable nature, and while it is true that neither of the Keafers have any legal responsibility to these children, they do have a very real interest in their welfare. This interest stems both from their interest as active participants in the placing of these three children for adoption and, as well, their promises to the mothers of these children to procure good homes for them.

This is not the case of a presumptive or natural heir of the adoptive parents challenging the decree of adoption or seeking its revocation as was true in Wolf's Appeal, 10 Sadler 139 (S. C., 13 Atl. 760), wherein the court held those petitioners were without standing to seek a vacation of the decree. To the same effect is Mullany's Adoption, 25 Pa. C. C. 561, and Brown's Adoption, 25 Pa. Superior Ct. 259. Compare, however, Russell Adoption Case, 166 Pa. Superior Ct. 590. In Helen Frances Young's Adoption, supra, it was held the committee in lunacy of the adopting parent had no standing following the death of that parent to join in an appeal from an order refusing to set aside a decree of adoption. Nor is this a case of a stranger attempting to set aside a decree of adoption because of technical irregularities in the adoption procedures,

especially where injury to the child would result as was the case of Sewall v. Roberts, 115 Mass. 262.

Where, however, the petitioners allege fraud in the petition for cancellation of the decree of adoption and this allegation is coupled with allegations, which, if true, would result in a situation wherein the best interests and welfare of the adopted child would be in danger if allowed to continue, no court, especially one of equitable administration, could conscientiously close its eyes to those petitioners on the ground that they were strangers and had no standing to formally call these facts to the attention of the court. This is particularly manifest when they may be the only persons who have knowledge of the true facts. Although, generally speaking, where natural parents have given their undoubted consent to the adoption of their children, they will not be heard to complain after a change of mind and circumstances. Where fraud has been alleged, however, even natural parents may move the court to vacate the previously entered decrees of adoption: Montgomery Adoption Case, 167 Pa. Superior Ct. 635, and Molin Adoption, 34 Del. Co. 470, in both of which cases the decrees of adoption were vacated.

The crucial and decisive question here presented may be stated as follows: Did the failure of the adopting parents to reveal to the court the domestic difficulties and institution of the divorce action prior to entry of a decree of adoption constitute constructive fraud upon which a court should now vacate the decree of adoption? Upon a careful examination of the governing authorities and principles of law, we must conclude that these failures did not amount to such constructive fraud as will justify the vacation of these decrees of adoption. Our reasons for this conclusion may be briefly set forth.

It is desirable to recall the nature and characteristics of fraud to ascertain whether or not the omis-

sions herein constitute fraud. One of the most difficult terms to define is fraud and courts have been both reluctant and unwilling to state in definite terms its whole nature and all its characteristics. "In its general or generic sense, it comprises all acts, omissions, and concealments involving a breach of legal or equitable duty and resulting in damage to another, or the taking of undue or unconscientious advantage of another, . . ."; 37 C. J. S., Fraud, 430, §1.

Fraud is generally and broadly classified as (1) actual fraud which is characterized by the intent to take advantage of another, and (2) constructive fraud which is characterized by a breach of a legal or equitable duty. It is the tendency to deceive, to violate confidence or to injure public interest which invokes the law's protective measures in constructive frauds. See LaCourse v. Kiesel, 366 Pa. 385. While the fine distinctions have not always been observed in using the term and while various terms and combinations of terms have been loosely used with reference to fraud, courts over many years and in many jurisdictions have observed generally these broad, distinctive classifications.

Mr. Justice Maxey in a footnote in Thorne's Estate, 344 Pa. 503, 511, quoted from Wiley v. Wirebelauer, 116 N. J. Eq. 391, 174 Atl. 20, 23, as follows:

" 'Generally, fraud consists in anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether by direct falsehood or innuendo, by speech or silence, word of mouth, or look or gesture, and is any artifice by which a person is deceived to his disadvantage' ".

That characterization of fraud was preceded by Mr. Justice Maxey's own statement:

"The essence of fraud is deceit intentionally and successfully practiced to induce another to part with

property or with some legal right. Fraud is practiced when deception of another to his damage is brought about by a misrepresentation of fact or by silence when good faith required expression."

This same definition and language was repeated by Mr. Justice Drew in writing the opinion in Reichert Estate, 356 Pa. 269, 274, and by Mr. Justice Bell in McClellan Estate, supra.

Analyzing and applying the foregoing language, it is manifest the omissions here concerned did not amount to an actual fraud for the reason there was no affirmative or overt act or intention to take advantage of any person or authority concerned or to conceal from the court the previous marital difficulties and previously instituted action in divorce. The inquiry then resolves itself as to whether or not there was a constructive fraud, that is, a breach of a duty resulting from the silence on the part of the adopting parents in all three adoption proceedings as to their prior domestic difficulties. To find that there was a constructive fraud, we would now have to say that both petitioners affirmatively desired to deceive the court or to violate the confidences of the court in such an important matter as the adoption of children.

In further analysis of the language of Mr. Justice Maxey in Thorn's Estate, supra, "Fraud is practiced when deception of another to his damage is brought about by a misrepresentation of fact *or by silence when good faith required expression*", it is obvious that petitioners at the adoption hearings did not actually and affirmatively misrepresent the facts as they were apparently not asked about previous marital difficulties. (Italics supplied.)

It may now be argued that petitioners knowingly kept silent when good faith required expression, believing that to have given expressions to these prior difficulties may have thereby prevented a decree of

adoption had the court been apprised of these facts. To this contention there are two obvious answers. Petitioners having had their marital difficulties which proceeded to the extent of institution of an action in divorce, reconciled those marital difficulties, withdrew the action and for a period of months lived together in apparent domestic harmony. In their own minds these difficulties had been satisfactorily resolved and their prior differences overcome and to them it was a closed book. This would be the natural and normal evaluation of that situation. And the other answer to the contention is that supposing the prior marital difficulties had been disclosed to the court at the time of the adoption, such may or may not have precluded a decree of adoption, depending upon the depth of the prior difficulties and particularly the fact of the reconciliation and the subsequent marital behavior of the petitioners. Indeed we cannot say what our predecessor, Judge Boose, would have done had the omissions been brought forth in those first adoption hearings, and certainly we cannot now say whether or not we would have declined or granted the petition for adoption had the omission been brought into the testimony at the third adoption hearing. All of the circumstances considered tend to negative the fact of a constructive fraud.

Considering the elements and characteristics of fraud and applying them to the facts in this case, we cannot say there was a fraud committed by petitioners at the time of either adoption proceeding which establishes a basis for the vacation or annullment of those decrees in adoption.

One other feature urged by petitioners remains to be considered and that is the welfare of these children as a basis for vacating these decrees of adoption. The welfare of children is always a most important and impelling consideration by a court where children are

involved and directly concerned and we are not unmindful of the welfare of these three children concerned in this proceeding. However, we are not persuaded that the future best interests and welfare of these children require that this court now vacate these three decrees in adoption. To do so, may result in more harm to their welfare than what may already have been done by these adopting parents. Moreover, their future best interests will have to be considered by this court in the pending custody proceeding which yet remains for determination.

On the basis of the foregoing opinion we now enter the following

*Order*

Now, September 6, 1957, the petition for the vacation of the decrees of adoption is declined, each party to pay their respective costs.

Same day counsel for petitioners excepts to the foregoing ruling, and at their request an exception is noted and bill sealed.