**In re LOWER LAKE ERIE IRON ORE ANTITRUST LITIGATION.**

**Master File No. MDL 587.**

United States District Court,
E.D. Pennsylvania.

April 12, 1989.

---

David H. Marion, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., and Richard T. Colman and Howrey & Simon, Washington, D.C., for plaintiffs.

Laurence Z. Shiekman, Pepper, Hamilton & Scheetz, Philadelphia, Pa., Richard J. Flynn, Sidley & Austin, Washington, D.C., for defendants.

MEMORANDUM AND ORDER NO. 48

FULLAM, Chief Judge.

MOTION OF DEFENDANT CONSOLIDATED RAIL CORPORATION FOR SUMMARY JUDGMENT AS TO PRE-CONVEYANCE ACTIVITY

Plaintiffs are suing a large number of railroads to recover damages allegedly sustained as a result of a longstanding (1958 through 1980) conspiracy to monopolize the over-land transportation of iron ore arriving at Lake Erie ports. One of the defendants is Consolidated Rail Corporation ("Conrail") which was created pursuant to the Regional Rail Reorganization Act to assume ownership and operation of the rail properties of the bankrupt northeastern railroads. The mandated conveyance of these rail properties to Conrail was effective as of April 1, 1976, and Conrail has conducted rail operations since that date. In its motion for (partial) summary judgment now under consideration, Conrail contends that it cannot be held liable for damages occasioned during the pre-conveyance portion of the alleged conspiracy.

For purposes of deciding this motion, it must be assumed that, after the April 1, 1976 conveyance, Conrail did actively participate in the alleged conspiracy. The parties have based their respective arguments upon the assumption that Conrail's post-conveyance activities amounted to its having "joined" the conspiracy. Plaintiffs point to the general rule that one who joins an existing conspiracy is equally liable with the other conspirators for all damages occasioned by the conspiracy, including damages caused before joinder. *See, e.g., Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149, 1180 (5th Cir.1982); *Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d 549, 554 (7th Cir.1980); *Myzel v. Fields,* 386 F.2d 718, 738 (8th Cir.1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed. 2d 1143 (1968); *Industrial Building Materials, Inc. v. Interchemical Corp.,* 437 F.2d 1336, 1343 (9th Cir.1971). Conrail argues that this so-called "late joinder" rule has not been adopted in the Third Circuit, and should not be; and that, in any event, subjecting Conrail to liability for the entire period of the conspiracy would do violence to the public policies underlying, and the intent of Congress in enacting, the RRRA.

**I.**

There can be no doubt that one who joins an ongoing conspiracy is subject to the same criminal liability as those who were members of the conspiracy through its entire existence. *U.S. v. American Radiator & Sanitary Corp.,* 433 F.2d 174, 182 (3d Cir.1970), *cert. denied,* 401 U.S. 948, 91 S.Ct. 929, 28 L.Ed.2d 231 (1971). And, as the cases cited above demonstrate, the general rule seems to be that civil liability, too, is unaffected by the duration

of one's participation in the conspiracy. Whether the Third Circuit Court of Appeals would apply this "late joinder" rule is, however, not altogether clear. In *Baughman v. Cooper–Jarrett, Inc.,* 530 F.2d 529, 533 n. 4 (3d Cir.), *cert. denied,* 429 U.S. 825, 97 S.Ct. 78, 50 L.Ed.2d 87 (1976), the Court stated:

> "In criminal cases, this circuit has held that a co-conspirator is liable for all conspiratorial acts, even those committed prior to his joining the conspiracy. *See U.S. v. Lester,* 282 F.2d 750 (3d Cir.1960), *cert. denied,* 364 U.S. 937 [81 S.Ct. 385, 5 L.Ed.2d 368] (1961); *Lefco v. U.S.,* 74 F.2d 66 (3d Cir.1934). We have no occasion to consider in this case whether the same rule applies in civil cases. *But see Essaness Theaters Corp. v. Balaban & Katz Corp.,* 1955 Trade Cases ¶ 68, 152 (N.D.Ill.1955)."

No Third Circuit case squarely addresses the issue, but, in a general review of antitrust law in *Tunis Bros. Co. v. Ford Motor Co.,* 763 F.2d 1482 (3d Cir.1985), *vacated and remanded on other grounds,* 475 U.S. 1105, 106 S.Ct. 1509, 89 L.Ed.2d 909 (1986), *reinstated,* 823 F.2d 49 (3d Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1013, 98 L.Ed.2d 979 (1988), the Court stated:

> "Those who, with knowledge of the conspiracy, aid or assist in carrying out the purposes of the conspiracy, make themselves parties thereto and are equally liable to [sic; for?] or guilty with the original conspirators (763 F.2d 1482, at p. 1491)."

Conrail would have me treat this statement as mere *dictum,* and notes that the *Tunis* court was not actually confronted with a "late joinder" issue; plaintiffs cite *Tunis* as controlling precedent for their "late joinder" argument.

I have concluded that, at the very least, there is nothing in the jurisprudence of the Third Circuit which would warrant rejection of the view prevailing in other circuits, namely, that the "late joinder" rule applies in civil as well as criminal cases. The *Tunis* language quoted above was repeated, and apparently regarded as a holding of the *Tunis* case, in *Nanavati v. Bur-* *dette Tomlin Memorial Hospital,* 857 F.2d 96, 119 (3 Cir.1988); and it seems doubtful that *Baughman's* "but see" reference to a 1955 district court decision from another circuit should lead to a different conclusion.

The more substantial issue, to which I now turn, is whether the unique circumstances of Conrail's creation and the underlying purposes of the RRRA warrant confining Conrail's potential liability to damages caused by the post-conveyance portion of the alleged conspiracy.

## II.

■ The question of the liability of a conspirator who joins an existing antitrust conspiracy usually arises in precisely that context: two or more firms are already engaged in conspiratorial activities, and the firm in question later joins and agrees to participate. Or, a parent company acquires a subsidiary which is already a part of the conspiracy, and the parent thereafter knowingly continues the conspiratorial activity. *See, e.g., Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d 549 (7th Cir. 1980). In the present case, on the other hand, the bankrupt northeastern railroads and their nonbankrupt predecessors had allegedly been engaged in the antitrust conspiracy for more than 20 years before their rail assets were, by act of Congress, conveyed to Conrail in 1976. Conrail was required to hire the bankrupts' employees to continue to operate the railroads, albeit in a reduced and streamlined configuration. And, as Conrail correctly argues, it was plainly the intent of Congress that Conrail start with a "clean slate", insofar as the liabilities of the bankrupt railroads were concerned. Thus, all parties seem to agree that Conrail cannot be held liable in this case on the basis of pre-conveyance activities of persons who, on and after April 1, 1976, were employed by Conrail. By the same token, however, Conrail can obviously be held liable for its own participation in antitrust violations after April 1, 1976.

Plaintiffs contend that they are not seeking to hold Conrail liable for the pre-conveyance acts of the persons who became Conrail employees on April 1, 1976, but

merely to impose liability upon Conrail for Conrail's participation in the antitrust conspiracy after that date. The fact that Conrail's post-conveyance participation in the conspiracy subjects it to joint and several liability for the entire universe of damages caused by the conspiracy is a consequence of Conrail's own actions, and does not reflect application of *respondeat superior* principles to Conrail for the activities of employees of the bankrupts. From Conrail's perspective, this is a distinction without a difference, and would result in the imposition of liability not intended by Congress.

Section 601(a) of the Rail Act, 45 U.S.C. § 791(a) provides:

"*Relationship to Other Laws.*

"(a) *Antitrust*

"(1) Except as specifically provided in paragraph 2 of this subsection, no provision of this chapter shall be deemed to convey to any railroad or employee or director thereof any immunity from civil or criminal liability, or to create defenses to actions, under the antitrust laws.

"(2) The antitrust laws are inapplicable with respect to any action taken to formulate or implement the Final System Plan where such action was in compliance with the requirements of such Plan and with respect to any action taken to formulate or implement any supplemental transaction.

The meaning of this language seems crystal clear: the transactions listed in subparagraph (2) are immune from antitrust liability, but the Rail Act does not otherwise provide immunity from or defenses to antitrust liability. That being so, it follows that if, as discussed above, late joinder liability is the law of this circuit, § 601 provides no shelter.

And, in view of § 601, there is no basis for implying antitrust immunity, or reduction in antitrust liability, from any other provision of the statute, or the statute as a whole, or the policies which led to its enactment. As the Supreme Court has stated, "Implied antitrust immunity is not favored, and can be justified only by a convincing showing of clear repugnancy between the antitrust laws and the regulatory system." *U.S. v. National Ass'n of Security Dealers,* 422 U.S. 694, 719–20, 95 S.Ct. 2427, 2443, 45 L.Ed.2d 486 (1975).

■ The Rail Act does reflect a congressional intent to enable Conrail to start out, as of April 1, 1976, with a clean slate. But there is plainly no basis for suggesting that Congress wished to enable Conrail to engage in an antitrust conspiracy thereafter without incurring the same penalties as other antitrust violators. Each participant in an antitrust conspiracy is liable for the entire amount of damages caused by the conspiracy, without any right of contribution from coconspirators. *Texas Industries v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981).

Rejection of Conrail's argument is consistent with, indeed virtually compelled by, the decision of the Special Court on the analogous issue of successorship liability under state law, *Consolidated Rail Corp. v. Reading Co., et al.,* 654 F.Supp. 1318 (Sp.Ct. RRRA, 1987).

I do not mean to suggest that liability may be imposed upon Conrail merely upon proof that, on April 1, 1976 and for a brief time thereafter, employees of the railroads, without the knowledge or participation of Conrail's management, may have continued to carry out pre-existing policies and practices which violated the antitrust laws. Presumably, it would be appropriate in these circumstances to allow Conrail management a brief period in which to learn of, and terminate, the alleged illegalities. But if, as plaintiffs contend in this case, Conrail's management actively participated in conspiratorial activities over a considerable period of time after April 1, 1976, it is my view that Conrail would thereby be rendered liable for all of the damages caused by the conspiracy, within the period of the statute of limitations.

For all of these reasons, Conrail's motion for summary judgment will be denied.