DANIEL BOONE AREA SCHOOL DIS-
TRICT, individually and on behalf of
others similarly situated, Plaintiffs,

v.

LEHMAN BROTHERS, INC. and
Lisa Vioni, Defendants.

No. 01–CV–74 J.

United States District Court,
W.D. Pennsylvania.

Feb. 5, 2002.

Richard A. Finberg, Malakoff, Doyle & Finberg, Pittsburgh, PA, David A. Gradwohl, Fox, Rothschild, O'Brien & Frankel, Landsdale, PA, for Plaintiffs.

Roy A. Powell, Megan E. Farrell, Dana Baiocco, Jones, Day, Reavis & Pogue, Pittsburgh, PA, Patrick R. Kingsley, Stadley, Ronon, Stevens & Young, Philadelphia, PA, David L. Carden, Jones, Day, Reavis & Pogue, New York City, Robert C. Micheletto, Jones, Day, Reavis & Pogue, Chicago, IL, Celeste A. Pometto, Leboeuf, Lamb, Green & MacRae, Pittsburgh, PA, for Lehman Brothers, Inc.

John H. Rirorda, Jr., Polito & Smock, Pittsburgh, PA, Michael Q. Carey, Carey & Associates, New York City, for Lisa Vioni.

### OPINION AND ORDER

D. BROOKS SMITH, Chief Judge.

This class action concerns the largest municipal fraud in Pennsylvania history, in which John Gardner Black defrauded vari-

ous school districts and local government units, including lead plaintiff Daniel Boone Area School District, losing approximately $70 million of public funds. The plaintiffs now seek to hold Lehman Brothers and its employee Lisa Vioni responsible for their role in Blacks fraudulent scheme. *See* dkt. no. 24. Before me now are the defendants motions to dismiss the plaintiffs amended complaint. Dkt. nos. 29, 31.

### I.

The fraudulent scheme to which Daniel Boone Area School District (Daniel Boone) and other school districts [1] fell victim was revealed for the first time on September 26, 1997, when the Securities and Exchange Commission began a civil enforcement action against John Gardner Black (Black) and two companies he controlled, Devon Capital Management, Inc. (Devon) and Financial Management Sciences, Inc. (FMS).[2] Black operated as an independent investment advisor for many school districts in the Commonwealth of Pennsylvania. Black, through Devon, entered into Investment Advisory Agreements with Daniel Boone pursuant to which he would deposit school district funds in Mid State Bank and then use those funds to invest on behalf of Daniel Boone. Dkt. 24 ¶¶ 44–49.

Facing stiff competition from other municipal investment advisors, Black devised the Collateralized Investment Agreement (CIA) in late 1993 and early 1994, hoping to increase his rate of return. *Id.* ¶ 55. CIAs were agreements entered into by Devon, purportedly on behalf of Daniel Boone, and FMS, pursuant to which FMS agreed to pay Daniel Boone principal and interest over a fixed term. *Id.* ¶ 56. FMS held all of the funds entrusted to it pursuant to the CIAs in a pooled account in Mid State Bank, and its payment obligations were collateralized by other securities on deposit in FMSs Pooled Account. *Id.* Although the CIAs explicitly provided that FMS would hold as collateral only those securities authorized for public investment under Pennsylvania law, FMS actually invested Daniel Boones funds in speculative derivative securities, which were not authorized investments. *Id.* ¶¶ 60–62. Blacks investments in derivative securities pursuant to the CIAs ultimately suffered substantial losses. *See, e.g., id.* ¶ 67. As trading losses mounted, Black began a Ponzi scheme to keep his operations going, attracting new school district clients whose initial investments were used to pay prior investors.[3] *Id.* ¶ 75. By the end of September 1997, Blacks losses totaled approximately $70 million.[4]

Daniel Boone now seeks to recover from Lehman Brothers (Lehman) and Lisa Vioni (Vioni)[5] for their alleged role in Blacks scheme. Black purchased derivative

---

1. I will refer to the plaintiff class collectively as Daniel Boone.

2. Where appropriate, I will refer to Black, Devon, and FMS collectively as Black. Black was President and sole shareholder of Devon, an investment advisor registered with the SEC. *See* dkt. no. 24 ¶ 4. Black was also President and majority shareholder of FMS, an affiliated entity. *See id.* ¶ 3.

3. A more detailed explanation of Blacks initial investments and his Ponzi scheme may be found in *Bald Eagle Area Sch. Dist. v. Keystone Financial,* 189 F.3d 321, 323–25 (3d

Cir.1999). The complexity of Blacks Ponzi scheme is also apparent in *S.E.C. v. Black,* 163 F.3d 188, 191–94 (3d Cir.1998).

4. Despite recoveries from other sources, outstanding losses equal about $16.7 million, not including available interest and legal fees and expenses. *See* dkt. no. 38, at 3 n. 3.

5. Because Vioni incorporates all of Lehmans arguments with respect to its Motion to Dismiss in support of her own Motion, *see* dkt. no. 32, at 2, I will refer to Lehman and Vioni collectively as Lehman.

securities from Lehman, and Vioni was the Lehman salesperson for the Black/Devon account. *Id.* ¶ 62. According to Daniel Boone, Lehman knew of Blacks extensive losses in trading derivatives, *id.* ¶ 64, and at some time in 1995, a lawyer employed by Lehman raised questions about whether it was proper for Black to invest in derivatives on behalf of Daniel Boone. *Id.* ¶ 69. Lehman allegedly continued to sell derivatives to Black even though it knew such investments were not authorized under Pennsylvania law. *Id.* ¶ 74.

On the basis of Lehmans knowledge of Blacks investment scheme and Lehmans role in selling derivative securities, Daniel Boone commenced this action against Lehman. Daniel Boone asserts six counts against Lehman. Some of these counts allege that Lehman is primarily liable for its own tortious conduct. Other counts are more inchoate, alleging that Lehman is liable for aiding and abetting, acting in concert with, and conspiring with Black. Because I conclude that, for five of its counts, there are no facts that would entitle Daniel Boone to relief against Lehman, I will grant the motions to dismiss with respect to those claims. However, because Daniel Boone asserts a viable civil conspiracy claim against Lehman, I will deny the motions to dismiss with respect to that single count.

## II.

When considering a motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6), I must accept as true all facts alleged in the complaint and view them in the light most favorable to the plaintiff. *Independent Enterprises, Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1168 (3d Cir.1997); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990); *D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943,

944 (3d Cir.1984). In order to prevail on a Rule 12(b)(6) motion, the movant must establish that no relief could be granted under any set of facts that the plaintiff could prove. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Trump Hotels & Casino Resorts v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988). In deciding a motion to dismiss, courts generally may consider only the allegations contained in the complaint, exhibits attached thereto, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). Finally, I must presume at the pleading stage that general factual allegations embrace those specific facts necessary to support the claim. *Lujan v. Natl. Wildlife Fed.*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *National Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994).

## III.

Lehmans primary argument is that Daniel Boone lacks standing to assert its claims against Lehman. Lehman asserts that Daniel Boone lacks an injury-in-fact, as required for standing under Article III. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *The Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir.2000). However, Daniel Boones substantial losses in this case are surely a constitutionally adequate injury-in-fact. Lehmans real complaint against Daniel Boones standing is that those losses are not causally connected to the conduct of Lehman. *See Defenders of Wildlife*, 504 U.S. at 560, 112 S.Ct. 2130 (the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. (internal quotation marks omit-

ted)); *The Pitt News*, 215 F.3d at 360–61. In arguing that Daniel Boone lacks standing because of the traceability requirement, however, Lehman is on shaky ground. As Wright and Miller explain in their discussion of the causation requirement for standing, causation may be misused as an excuse to avoid decision. 13 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 3531.5 (1984). Lehmans standing argument is not *a fortiori* from any case it cites, and because I do not wish to enter unnecessarily into the sea of uncertainty surrounding this issue, *id.*, I will defer any discussion of Lehmans standing argument—the success of which would require dismissal of all of Daniel Boones claims—until after reaching a decision regarding the alleged defects in each of Daniel Boones separate counts. *See infra* Part IV.A.

I turn, then, to Lehmans arguments that each of Daniel Boones six counts is defective on its merits and must be dismissed. In its amended complaint, Daniel Boone asserts the following six counts against Lehman: (1) tortious conduct in concert with others pursuant to RESTATEMENT (SECOND) OF TORTS § 876(a); (2) aiding and abetting a breach of fiduciary duty in violation of RESTATEMENT (SECOND) OF TORTS § 876(b); (3) civil conspiracy; (4) aiding and abetting a violation of the Pennsylvania Securities Act under § 503 of that Act; (5) common law fraud; and (6) negligence and negligence *per se. See generally* dkt. no. 30. Because the counts alleging the primary liability of Lehman are logically prior to the inchoate torts Daniel Boone also asserts, I begin my analysis with Daniel Boones negligence and fraud claims. After addressing those counts, I then consider Daniel Boones aiding and abetting, civil conspiracy, and acting in concert claims.

### A.

In Count VI of its amended complaint, dkt. no. 30, Daniel ˙Boone asserts negligence and negligence *per se* claims against Lehman. Daniel Boone cites Pennsylvania statutes and administrative regulations to establish that Lehman had a duty of care with respect to Daniel Boone. *See id.,* ¶¶ 141–49. Daniel Boone also argues in its brief that the foreseeability of its injury created a duty of care on the part of Lehman. *See* dkt. no. 38, at 11. In addition, Daniel Boone invokes the doctrine of negligence *per se* in claiming that Lehman is liable for breaching its duties under the relevant statutes. *See* dkt. no. 30, ¶ 150. I take up each of these claims separately.

### 1.

■ Daniel Boone partly bases all its claims, including its claims of negligence and negligence *per se,* on provisions of the Pennsylvania Public School Code, 24 PA. CONS.STAT. ANN § 4–440.1 (West 2001), and the Debt Act, 53 PA. CONS.STAT. ANN. § 8224(b) (West 2001). The School Code specifies the types of investments that are authorized for investment of school district funds, and there is no dispute that the derivative securities Black purchased were unauthorized. *See* 24 PA. CONS.STAT. ANN. § 4–440.1(c) (listing authorized investments). Similarly, the Debt Act provides that a local government unit may invest in any securities in which the Commonwealth of Pennsylvania might itself invest, and again, there is no dispute that the derivative securities Black purchased were not securities in which the Commonwealth might invest. *See* 53 PA. CONS.STAT. ANN. § 8224(b). Lehman argues, however, that despite the fact that Blacks investments in derivatives were not lawful under these statutory provisions, the statutes in question do not impose a duty on Lehman.

On the face of the statutes, it is clear that Lehmans claim is correct. The School Act refers specifically to the board of school directors in any school district. 24 Pa. Cons.Stat. Ann. § 4–440.1(b) (West 2001). Similarly, the Debt Act applies to local government units. 52 Pa. Cons.Stat. Ann. § 8001(b) (West 2001). None of these statutes creates a duty incumbent upon Lehman, and because a statute that creates no duty cannot be the basis of liability, *Travelers Ins. Co. v. SCM Corp.*, 600 F.Supp. 493, 499 (D.D.C.1984), Lehman cannot be liable in negligence *solely* on the basis of these statutes.

■ At the same time, however, if another statute imposed any duty on Lehman to avoid selling securities that were unauthorized under the School Code and the Debt Act, then it might be possible for Daniel Boone to state a claim under that other statute. To this end, Daniel Boone also argues that Lehman breached the duties imposed by 70 Pa. Cons.Stat. Ann. § 401 (West 2001) and 64 Pa.Code § 403.010(b) (West 2001). According to the former statute, It is unlawful for any person, in connection with the offer, sale or purchase of any security of this State, directly or indirectly ... to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person. 70 Pa. Cons.Stat. Ann. § 401(c). A related administrative code regulation requires that

> Each broker-dealer or agent who recommends to a customer the purchase, sale or exchange of any security shall have reasonable grounds to believe that the recommendation is not unsuitable for such customer on the basis of information furnished by such customer after reasonable inquiry concerning the customers investment objectives, financial situation and needs, and any other infor-

mation known by or made available to such broker-dealer or agent.

64 Pa.Code § 403.010. According to Daniel Boone, Lehman knowingly caused violations of Section 401 ... by trading in derivatives using school district funds. Dkt. no. 24 ¶ 144. Similarly, Daniel Boone argues that Lehman violated § 403.010 because they knew that derivatives were not authorized investments for Pennsylvania school districts and therefore were unsuitable investments. *See id.* at ¶ 148. Daniel Boones negligence action is based upon the theory that these alleged statutory violations constituted breaches of duty.

In response, Lehman argues that § 501 of the Pennsylvania Securities Act is the sole source of liability for alleged violations of sections 401 and 403 (under which 64 Pa.Code § 403.010 was promulgated). Section 501(a) of the Securities Act provides as follows:

> Any person who ... (ii) offers or sells a security in violation of sections 401, 403, 404 or otherwise by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading ... shall be liable to the person purchasing the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment, less the amount of any income or distributions, in cash or in kind, received on the security, upon the tender of the security, or for damages if he no longer owns the security.

70 Pa. Cons.Stat. Ann. § 1–501(a) (West 2001). As the Third Circuit has stated, The *sole* source of *civil* liability for any acts in violation of sections 401, 403, and 404 of the Pennsylvania Securities Act is

found in section 501. *Biggans v. Bache Halsey Stuart Shields*, 638 F.2d 605, 609 (3d Cir.1980), *overruled on other grounds, In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.1988). Both parties argue about the effect of this pronouncement on the possibility of liability under § 503 of the Pennsylvania Securities Act.[6] *See* dkt. no. 30, at Part I.D.1.B; dkt. no. 38 at Part F.1. However, those arguments are separate from the issue of whether Daniel Boone has a cause of action against Lehman based upon common law negligence grounded in sections 401 and 403 of the Securities Act. Daniel Boone cites no case that would contradict the import of the proposition of *Biggans*. While there have been subsequent developments in the application of *Biggans* to § 503, later cases (including *In re Data Systems*) have left undisturbed this holding that sections 401 and 403 of the Securities Act must be enforced by means of § 501. It is therefore clear that violations of § 401 and § 403.010 cannot be civilly enforced through a negligence action; the relevant remedy for such violations is § 501.[7] Therefore, Daniel Boones negligence action based on the Pennsylvania Securities Act must fail as a matter of law.

**2.**

Daniel Boone also premises its negligence action against Lehman on common law duties allegedly owed to Daniel Boone by Lehman. *See* dkt. no. 38, at 30. According to Daniel Boone, the foreseeability of the impending harm caused by Lehmans sale of derivative securities to Black created a duty under Pennsylvania law. *See Miller v. Group Voyagers Inc.*, 912 F.Supp. 164, 167 (E.D.Pa.1996) ( [T]he defendant owes the plaintiff a duty if the defendants actions are *unreasonable* or expose the plaintiff to an elevated risk of *foreseeable* harm.). In response, Lehman argues that, under the factors set forth in *Althaus v. Cohen*, 562 Pa. 547, 756 A.2d 1166, 1169 (2000), it has no duty to Daniel Boone.

*Althaus* is an authoritative interpretation of Pennsylvania law from the Pennsylvania Supreme Court, so I am obligated to follow it. According to the Supreme Court,

> The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actors conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

*Id.* (citing cases in support of each factor). After evaluating each of these factors, it appears that Lehman has no common law duty of care towards Daniel Boone. First, the relationship between Lehman and Daniel Boone is quite attenuated. As Daniel Boone alleges, Black purchased derivative securities from Lehman for the FMS Pooled Account, which then served as collateral for the CIAs into which Black invested Daniel Boones funds. *See* dkt. no. 24 ¶ 62; *see also Bald Eagle Area Sch. Dist. v. Keystone Financial*, 189 F.3d 321, 324–25 (3d Cir.1999) (describing Blacks investment scheme). Daniel Boone is therefore at least two steps removed from any

---

**6.** This issue is discussed *infra* in Part III.C.

**7.** Daniel Boone did not plead a violation of § 501. Indeed, it appears that it could not, because § 501 provides a remedy only to a purchaser of securities. *See* 70 Pa. Cons.Stat.

Ann. § 1–501(b) (West 2001). Daniel Boone does not allege that it purchased any securities from Lehman, because all securities purchases were made by Black.

relationship with Lehman. Second, there is obviously some social utility in Lehmans sale of derivative securities, since derivative securities are an important means by which economic risks are reallocated. *See generally* STEPHEN A. ROSS, ET AL., CORPORATE FINANCE, 652 (4th ed.1996) (describing derivatives as useful and important). Third, while it is difficult to characterize the exact risk involved in this case, this factor does not clearly point in favor of imposing a duty of care on Lehman. Daniel Boone alleges that Lehman knew it was selling securities that Blacks client school districts were not authorized to own, *see* dkt. no. 24 ¶ 24, so the risks associated with doing so were foreseeable to Lehman. On the other hand, the risk that Black would engage in an elaborate Ponzi scheme to defraud Daniel Boone was unforeseeable. It should also go without saying that the nature of the risk involved here inheres largely in the nature of derivative securities, which can be highly volatile. Fourth, one consequence of imposing an additional duty of care on Lehman would be the possibility that the Pennsylvania Securities Act would be subverted by altering the social cost-benefit balance as set by the legislature in the Acts regulatory framework. This is not a consequence that a federal court sitting in diversity should embrace. Finally, while the publics pecuniary interests might be served by allowing Daniel Boone to assert a negligence action against Lehman, other public interests—like the integrity of Pennsylvanias statutory scheme regulating securities—might not be so well served.

In weighing all of these factors, I conclude as a matter of law that, under the common law of Pennsylvania, Lehman owed no duty of care to Daniel Boone. As a consequence of that determination, no negligence action against Lehman will lie and that cause of action will be dismissed.

### 3.

 Daniel Boone also seems to argue that it has a cause of action against Lehman for negligence *per se* that is separate from its simple negligence action. It appears, however, that Daniel Boone misunderstands the import of the doctrine of negligence *per se*.[8] Negligence *per se* is not a distinct cause of action in tort, but rather an evidentiary presumption that, in certain circumstances, a defendants mere breach of a statutes requirements is proof of a breach of its duty of care. The effect of such a rule is to stamp the defendants conduct as negligence, with all the effects of common law negligence, but with no greater effect. W. PAGE KEETON, ET AL., PROSSER & KEETON ON TORTS 229–31 (5th ed.1984). Having already determined that Daniel Boone has no cause of action under the statutes and administrative regulations it cites, *see supra* Part III.A.1, there is no need to analyze whether the doctrine of negligence *per se* applies to those statutes and regulations.

### B.

In Count V of its amended complaint, Daniel Boone asserts that Lehman committed fraud by selling derivative securities to Black. *See* dkt. no. 24 ¶¶ 128–39. The fraud claim is based in part on Lehmans alleged violations of industry stan-

---

**8.** For example, in discussing Pennsylvanias rule that there is a close relationship between whether a statute provides a private cause of action and whether it protects an individual harm that would support application of the negligence *per se* doctrine, *Wagner v. Anzon*, 453 Pa.Super. 619, 684 A.2d 570, 575 (1996), Daniel Boone argues that negligence *per se* would be superfluous whenever a statute provided a private cause of action. *See* dkt. no. 38, at 31 n. 21. But the doctrine of negligence *per se* is not a separate cause of action that could be duplicative of a cause of action provided explicitly in a statute.

dards—including the NASD Conduct Rules and the rules of the New York Stock Exchange—which allegedly demonstrate a course of conduct amounting to fraud. *See id.* at ¶¶ 130–31. Daniel Boone also claims that, because Lehman knew of misrepresentations Black made to Daniel Boone but failed to correct them, it participated in a fraudulent scheme with Black. *See id.* at ¶ 138.

■ Although the Third Circuit has not addressed the issue explicitly, it is clear from numerous District Court opinions that there is no private right of action for a violation of a stock exchange rule in this Circuit. *See Manning v. Maloney,* 787 F.Supp. 433, 436 (M.D.Pa.1992) (No cause of action exists for the violation of NYSE Rules or non-compliance with brokerage firm internal operating procedures.); *Bloch v. Prudential–Bache Securities,* 707 F.Supp. 189, 195 (W.D.Pa.1989) (It seems well settled that no direct cause of action exists for violations of self-regulatory organizations such as the NYSE or NASD.); *Witt v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 602 F.Supp. 867, 869 (W.D.Pa. 1985) ( [T]here is no private right of action against defendants, either express or implied, under the New York Stock Exchange and NASD Rules.); *Miller v. E.W. Smith Co.,* 581 F.Supp. 817, 819 (E.D.Pa. 1983); *Binkley v. Sheaffer,* 609 F.Supp. 601, 602–03 (E.D.Pa.1985); *In re Farmers Group Stock Options Litig.,* 1989 WL 73245, *3 (E.D.Pa. July 5, 1989). Given the weight of this persuasive authority

from other courts of this Circuit, which I consider well-reasoned, I conclude that Daniel Boone cannot assert a fraud claim against Lehman on the basis of Lehmans alleged violations of industry standards.[9]

■ Daniel Boone also alleges that Lehman knew or consciously disregarded that Devon was making misrepresentations and fraudulent omissions, *id.* at ¶ 133, and that this constituted participation in a fraudulent scheme. *Id.* at ¶ 134. Under Pennsylvania law, fraud is any artifice by which a person is deceived to his disadvantage, *In re Reichert's Estate,* 356 Pa. 269, 51 A.2d 615, 617 (1947), and a misrepresentation of some kind— whether affirmative or otherwise—is a necessary element of a fraud claim. *See Moser v. DeSetta,* 527 Pa. 157, 589 A.2d 679, 682 (1991); *Wilson v. Donegal Mutual Ins. Co.,* 410 Pa.Super. 31, 598 A.2d 1310, 1315 (1991). In some circumstances, concealment of a material fact can support a claim for fraud, *see Wilson,* 598 A.2d at 1315; *Mancini v. Morrow,* 312 Pa.Super. 192, 458 A.2d 580 (1983), but mere silence is not sufficient in the absence of a duty to speak. *Wilson,* 598 A.2d at 1315; *see also Sunquest Info. Sys. v. Dean Witter Reynolds, Inc.,* 40 F.Supp.2d 644, 656 (W.D.Pa. 1999) (Smith, J.) (It is axiomatic, of course, that silence cannot amount to fraud in the absence of a duty to speak.). Absent a confidential or fiduciary relationship between the parties, such a duty to speak normally does not arise. *Id.*

---

9. The Supreme Court has recently cast doubts on the propriety of a courts inferring a private right of action from a legislative scheme. *See Correctional Servs. Corp. v. Malesko,* 534 U.S. 61, 122 S.Ct. 515, 519 n. 3, —— L.Ed.2d —— (2001) (Since our decision in *J. I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), we have retreated from our previous willingness to imply a cause of action where Congress has not provided

one.); *id.,* 122 S.Ct. at 523 (Scalia, J., concurring) ( [W]e have abandoned that power to invent implications in the statutory field.); *Alexander v. Sandoval,* 532 U.S. 275, 121 S.Ct. 1511, 1519–20, 149 L.Ed.2d 517 (2001). The Courts reasoning would seem to apply with full force to implying private rights of action from the regulatory arrangements of the NASD and NYSE.

Daniel Boone does not allege that any confidential or fiduciary relationship existed between it and Lehman. Consequently, Lehman did not conceal Blacks misrepresentations to Daniel Boone, even if, as alleged, Lehman knew or consciously disregarded those misrepresentations. At most, Daniel Boones amended complaint alleges that Black and not Lehman made fraudulent misrepresentations. *See* dkt. no. 24, at ¶¶ 6, 8, 54. Because Daniel Boone does not allege facts that would be adequate to establish a misrepresentation that would support its fraud claim, Count V of the amended complaint will be dismissed.

## C.

■ In Count IV of its amended complaint, Daniel Boone alleges that Lehman violated § 503 of the Pennsylvania Securities Act, 70 PA. CONS.STAT. ANN. § 1–503(a) (West 2001). That statute, which is titled Joint and several liability; contribution; corporations right of indemnification, provides as follows:

> Every affiliate of a person liable under section 501 or 502, every partner, principal executive officer or director of such person, every person occupying a similar status or performing similar functions, every employee of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the person liable hereunder proves that he did not know,

and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

*Id.* Daniel Boone claims that Lehman materially aided Black by selling derivative securities to him, and that Blacks conduct would have made him liable under § 501 of the Securities Act.[10] For that reason, Daniel Boone argues that Lehman is liable jointly and severally with and to the same extent as Black would be for his fraud.

Lehman contends that the Third Circuit has clearly held that The *sole* source of *civil* liability for any acts in violation of sections 401, 403, and 404 of the Pennsylvania Securities Act is found in section 501. *Biggans v. Bache Halsey Stuart Shields,* 638 F.2d 605, 609 (3d Cir.1980), *overruled on other grounds, In re Data Access Systems Securities Litigation,* 843 F.2d 1537 (3d Cir.1988). Daniel Boone counters by citing *McCarter v. Mitcham,* 883 F.2d 196 (3d Cir.1989), which recognized that *Biggans* did not address the possibility of liability under § 503. *See id.* at 204 (noting that the Third Circuit in *Biggans* did not consider whether brokers in the role of aiders and abettors would be liable under the Act). *McCarter* thus appears to recognize that *Biggans* stated the scope of liability under the Pennsylvania Securities Act too narrowly; civil liability exists principally under § 501, but it might also exist under § 503 where that statutes other requirements are met.

The other requirements of § 503, however, are not met in this case. On its face,

---

**10.** Section 501 makes a person civilly liable for, *inter alia,* violations of § 401 of the Securities Act. *See* Part III.A, *supra.* Daniel Boone alleges that Black violated § 401, *see* dkt. no. 24 ¶ 122, which provides as follows:

> It is unlawful for any person in connection with the offer, sale or purchase of any security in this State, directly or indirectly:

> (a) to employ any device, scheme or artifice to defraud; or

> . . . . .

> (c) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

70 PA. CONS.STAT. ANN. § 1–401 (West 2001).

§ 503 carries with it the precondition that there be a person liable under section 501 or 502. 70 PA. CONS.STAT. ANN. § 1–503(a) (West 2001). The statute therefore requires that someone other than the § 503 defendant be adjudicated liable under § 501 in order for the defendant to be liable under § 503. Support for this interpretation of the statute comes from several sources. Not only is this a plain reading of the first clause of the statute, all subsequent clauses of the statute refer to classes of defendants who have some relationship to such person, where such person always refers to a person held liable under section 501 or 502. *See id.* The statute also plainly states that a defendant found liable under § 503 is liable jointly and severally with and to the same extent as a person liable under § 501, again presuming that some third person has been adjudicated to be liable. In addition, § 503 is titled joint and several liability and contribution; the title is not liability for aiding and abetting, as if such liability could exist separate and apart from an independent determination that some principal were liable under § 501. Furthermore, the Third Circuit has recognized that section 503 affects joint and several liability, contribution, and a corporations right to indemnification. *See Gruber v. Price Waterhouse,* 911 F.2d 960, 967 (3d Cir.1990); *see also In re Phar–Mor Securities Litigation,* 892 F.Supp. 676, 689 (W.D.Pa.1995) (holding that section 1–503 does not provide a private cause of action for aider and abettor liability); *Penturelli v. Spector Cohen Gadon & Rosen,* 640 F.Supp. 868, 871 (E.D.Pa.1986) (It appears that [§ 503] establishes a cause of action in favor of a party who has been held liable to a private party under section 501). Finally, in related state-court litigation, Judge Hiram Carpenter of the Court of Common Pleas of Blair County found that liability under § 503 required that some other person or entity be found liable under § 501. *See* dkt. no. 38, ex. A, *reprinting Daniel Boone Area Sch. Dist v. Kutak Rock,* No.1999–4899, slip op. at 11 (Pa. Ct. Comm. Pleas August 16, 2000). Taken together, it appears to be undeniable that a mere allegation that a third party would be liable under § 501 is insufficient to support liability under § 503.

Daniel Boone alleges only that Black would be liable under § 501 because of his alleged violation of § 401, *see* dkt. no. 24 ¶¶ 123, 122. Nowhere does Daniel Boone allege that Black has been found liable under § 501, so this requirement for liability under § 503 is not satisfied. Consequently, Lehman cannot be found liable under § 503 of the Pennsylvania Securities Act. Count IV of Daniel Boones complaint will be dismissed.

### D.

In Count III of its amended complaint, Daniel Boone alleges that Lehman conspired together with Black to use school district funds to invest in unauthorized derivatives. *See* dkt. no. 24 ¶ 111. Under Pennsylvania law, a civil conspiracy requires (1) two or more person who combine or agree with an intent to do an unlawful act or to do an otherwise lawful act by unlawful means, *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466, 472 (1979), and (2) proof of malice, i.e., an intent to injure. *Id.* Lehman makes two arguments against its liability for civil conspiracy, both of which fail.

First, Lehman contends that, because it had no duties under either the Pennsylvania School Code or Debt Act, *see* Part III.A.1, *supra,* it could not have agreed with Black to do an unlawful act where that act involves a violation of the School Code or Debt Act. Lehman reasons that, because it could not itself violate

either statute by selling derivative securities to Black, it could not have had an intent to violate either statute. Lehman misunderstands the scope of the first element of a civil conspiracy. It is true under Pennsylvania law that absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act. *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa.Super.2000); *Pelagatti v. Cohen*, 370 Pa.Super. 422, 536 A.2d 1337, 1342 (1987). However, the particular conduct from which the civil cause of action arises may be the unlawful conduct of a co-conspirator; if this were not true, liability for civil conspiracy would add nothing to tort law generally. Just because Lehman could not itself commit any unlawful act by selling derivatives, that does not mean that it could not be liable for a civil conspiracy with Black if Blacks purchase of the derivatives were unlawful, and Blacks purchase of derivatives on behalf of Daniel Boone is arguably unlawful by virtue of *Blacks* possible violation of the School Code and Debt Act, or because of *Blacks* breach of his fiduciary duties. This case is therefore unlike a case in which there is no conspiracy because the principal tortfeasor could not be liable for the alleged tort that was the basis for the conspiracy. *See, e.g., Kadel v. McMonigle*, 425 Pa.Super. 253, 624 A.2d 1059 (1993) (finding that real estate broker could not be liable for civil conspiracy to deprive plaintiff of his property when the alleged co-conspirator was not primarily liable because she was free to sell and convey the property at issue). Rather, because it appears at this stage that Black could be primarily liable to Daniel Boone for his unlawful acts,[11] Lehman might be liable as a co-conspirator with Black because it sold derivatives to him knowing that his purchase of those derivatives was unlawful.[12]

Second, Lehman argues that Daniel Boones cursory allegation of malice is insufficient because Lehman did not act with the sole purpose to injure Daniel Boone. Lehman relies upon language in *Thompson Coal*, where the court concluded on summary judgment that there had been no record evidence that the defendant had acted solely to injure the plaintiffs but rather the evidence suggested that the defendant had acted solely to advance the legitimate business interests of his client and to advance his own interests. *Thompson Coal*, 412 A.2d at 472. According to Lehman, its sale of derivatives to Black was not itself unlawful, consequently the sale of the derivatives was solely for its own financial benefit, and therefore it acted without the malice required for civil conspiracy. While at least one other court has interpreted *Thompson Coal* as holding that there is no malice where a defendants purpose was personal or professional benefit, *see Spitzer v. Abdelhak*, 1999 WL 1204352, at *9 (E.D.Pa.1999), I disagree with that interpretation. The language in

---

**11.** In this respect, liability for civil conspiracy differs from liability under § 503 of the Pennsylvania Securities Act, discussed *supra* Part III.C. Section 503 provides for contribution not liability and contribution requires that some other person be adjudicated liable under the Pennsylvania Securities Act. Civil conspiracy, on the other hand, is not premised upon such an adjudication, and Daniel Boones allegations regarding Blacks conduct are a sufficient basis for an action against Lehman as an alleged co-conspirator.

**12.** Obviously, the extent of Lehmans knowledge about Blacks unlawful activities will be crucial to making any inference that Lehman agreed with Black to engage in those activities. On a motion to dismiss, however, it is enough that Daniel Boone alleged that Lehman knew, or consciously disregarded, that school district funds could not be used to trade in derivatives. Dkt. no. 24 ¶ 111.

*Thompson Coal* on which Lehman relies is a characterization of evidence adduced at the summary judgment stage, and the import of that language is that, as a matter of fact, there was no malice in that case because the defendant was acting for its own legitimate business purposes and any injury to the plaintiff was a mere secondary and unintended effect of the otherwise proper conduct. Here, Daniel Boone has alleged that Lehman knew that Blacks actions were unlawful, *see* dkt. no. 24 ¶ 111, and from this it can be inferred that Daniel Boones injuries were not simply an accidental side-effect of Lehmans otherwise legitimate business interests. At this stage, Daniel Boone adequately alleges malice, and that allegation is sufficient to state a claim against Lehman for civil conspiracy. Lehmans motion to dismiss will therefore be denied with respect to Count III.

### E.

Daniel Boones first count against Lehman alleges that Lehman engaged in tortious conduct in concert with Black, in violation of RESTATEMENT (SECOND) OF TORTS § 876(a). The Pennsylvania Supreme Court adopted § 876(a)s concert of action theory in *Skipworth v. Lead Industries Assoc., Inc.*, 547 Pa. 224, 690 A.2d 169, 174–75 (1997). *See also Allegheny General Hospital v. Philip Morris, Inc.*, 116 F.Supp.2d 610, 620 (W.D.Pa.1999). According to the Restatement, For harm resulting to a third person from the conduct of another, one is subject to liability if he: (a) does a tortious act in concert with another or pursuant to a common design with him.... RESTATEMENT (SECOND) OF TORTS § 876(a). Lehman argues, *inter alia*, that it has not done any tortious act

and so cannot be liable under § 876(a). Because I agree, I will dismiss Count I of Daniel Boones amended complaint.

■■■ The plain language of § 876(a) indicates that a concert of action claim will lie only if both persons who are alleged to have acted in concert each committed a tortious act. If one person did not commit a tortious act, then that person cannot have acted in concert with another person who did harm the plaintiff. As one court has put it, Implicit in the proof of this cause of action, then, is the commission of a tortious act by [both parties alleged to have acted in concert]. *Friedman v. F.E. Myers Co.*, 706 F.Supp. 376, 382 (E.D.Pa. 1989). This accords with the interpretation of § 876(a) given by Judge Carpenter in state court litigation related to this same fraud. *See* dkt. no. 38, ex. A, *reprinting Daniel Boone Area Sch. Dist v. Kutak Rock*, No.1999–4899, slip op. at 8–9 (Pa. Ct. Comm. Pleas August 16, 2000) (Section 876(a) requires as a threshold that the third party themselves [sic] be involved in tort[i]ous conduct which is in concert with the tort[i]ous conduct of another.).

Daniel Boone essentially agrees with this interpretation of § 876(a) when it admits that it is not trying to bootstrap the tortious conduct of Black onto Lehman, but rather seeks to ground its concert of action claim on Lehmans own tortious conduct. *See* dkt. no. 38, at 12 n. 10. Because I have already concluded that Daniel Boone cannot state a valid claim against Lehman for any of Lehmans own allegedly tortious conduct, the tortious act requirement for a § 876(a)s concert of action claim is not met in this case.[13] Therefore,

---

**13.** My conclusion that Daniel Boone has stated a valid cause of action against Lehman for civil conspiracy is not to the contrary. One may be a conspirator in a civil conspiracy without oneself committing any tortious act. Liability for civil conspiracy is available because the tortious acts of one co-conspirator may be imputed to other co-conspirators. If

Count I of Daniel Boones amended complaint must be dismissed.

### F.

Finally, Count II of Daniel Boones amended complaint asserts that Lehman aided and abetted Blacks breach of fiduciary duty, and that therefore Lehman is liable under RESTATEMENT (SECOND) OF TORTS § 876(b). Without belaboring this point, I will dismiss this count as well. As recognized by Judge Carpenter in the related state court litigation, the Pennsylvania Supreme Court has not yet adopted § 876(b) as the law of Pennsylvania. *See* dkt. no. 38, ex. A, *reprinting Daniel Boone Area Sch. Dist v. Kutak Rock,* No.1999–4899, slip op. at 7 (Pa. Ct. Comm. Pleas August 16, 2000); *see also Clayton v. McCullough,* 448 Pa.Super. 126, 670 A.2d 710, 713 (1996). Daniel Boone does not argue that the Pennsylvania Supreme Court is likely to adopt § 876(b).[14] Indeed, Judge Carpenters opinion cogently explains how the adoption of § 876(b) would represent a significant expansion of Pennsylvania tort liability. *See Kutak Rock,* slip op. at 9 (As we read Section 876(b), it represents a considerable expansion of Section 876(a).). As a federal court sitting in diversity, it is not for me to say whether the common law of Pennsylvania should include an action under § 876(b). I will therefore dismiss Daniel Boones cause of action because it has not been recognized as part of Pennsylvanias law.

### IV.

Having addressed the merits of Daniel Boones six counts, there are a few other issues remaining. I will address each of these separately.

### A.

Lehman argues in its brief on its Motion to Dismiss that Daniel Boone lacks standing to assert any claims against Lehman because Daniel Boones injuries are not traceable to Lehmans conduct. Having determined that five of Daniel Boones six counts must fail on their merits, I need not consider standing to assert those claims. With respect to the civil conspiracy count that remains, it is clear that traceability presents no obstacle to Daniel Boones standing. There is little doubt that Daniel Boones injuries are traceable to Blacks conduct, and by virtue of the alleged conspiracy between Black and Lehman, those injuries are also traceable to Lehman. Daniel Boone therefore has standing to assert its civil conspiracy claim against Lehman

### B.

■ Lehman also argues that it cannot be liable for any injuries suffered by Daniel Boone prior to March 14, 1996, because it was not until that date that Lehman allegedly acquired knowledge of Blacks scheme. Lehman has moved to dismiss Daniel Boones action prior to the onset of discovery; discovery should reveal at what point Lehman acquired any knowledge on

two civil co-conspirators could be said to act in concert under § 876(a) simply on the basis of their conspiracy with each other, liability under § 876(a) would become completely duplicative of liability for civil conspiracy.

14. All Daniel Boone argues in its brief is that, on the merits of an § 876(b) action, it has adequately stated a claim against Lehman. *See* dkt. no. 38, at 13–16. While it notes that

it disagrees with Judge Carpenters conclusion that § 876(b) has not been adopted in Pennsylvania, Daniel Boone merely cross-references its discussion of the merits of its § 876(b) action without addressing whether the Pennsylvania Supreme Court would be likely to adopt that cause of action. *See* dkt. no. 38, at 16 n. 13.

which its liability as a co-conspirator might be predicated. And in any event, co-conspirators might be liable for acts committed prior to their joining the conspiracy. *See In re Lower Lake Erie Iron Ore Antitrust Litigation*, 710 F.Supp. 152, 153–54 (E.D.Pa.1989) (noting that there is nothing in the jurisprudence of the Third Circuit that would warrant rejection of this late joinder rule in civil conspiracy cases). Accordingly, it is premature at this point to limit the time frame for which Lehman could be held liable as a co-conspirator for Daniel Boones injuries.

### C.

Finally, Lehman argues that it cannot be liable for punitive damages under Courts IV or VI of Daniel Boones amended complaint. Because I will dismiss those counts, I need not reach this issue.

### V.

Based on the allegations in Daniel Boones amended complaint, it appears that Lehman could only have had—at most—a limited role in the municipal fraud committed by John Gardner Black. For this reason, most of the claims Daniel Boone asserts against Lehman must be dismissed. Yet even if its role in Blacks scheme was limited, it is still possible that Lehman was a civil conspirator with Black, and that Lehman could be liable to Daniel Boone on that basis. I therefore will not dismiss Count III of Daniel Boones amended complaint. Accordingly, it is hereby

ORDERED AND DIRECTED, this 5th day of February 2002, that Defendant Lehman Brothers Motion to Dismiss, dkt. no. 29, and Defendant Lisa Vionis Motion to Dismiss, dkt. no. 31, are GRANTED IN PART AND DENIED IN PART. The Motions are granted with respect to Counts I, II, IV, V, and VI; the Motions are denied with respect to Count III.

It is FURTHER ORDERED that Defendant Lehman Brothers Motion to Dismiss, dkt. no. 20, and Defendant Lisa Vionis Motion to Dismiss, dkt. no. 22, are DENIED AS MOOT.

It is FURTHER ORDERED that Defendant Lehman Brothers Motion for Leave to File an Enlarged Reply Brief, dkt. no. 45, is GRANTED.

It is FURTHER ORDERED that Plaintiff Daniel Boone Area School Districts Motion for Oral Argument, dkt. no. 35, is DENIED.

It is FURTHER ORDERED that Defendants Lehman Brothers and Lisa Vioni shall answer Plaintiffs amended complaint within 30 days of the date of this order.