Reichert Estate.

Argued January 6, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Abraham Wernick,* with him *Ellis Rudman,* for Ben Tizer et ux., appellants.

*I. Emanuel Sauder,* with him *Albert B. Soffian,* for Louis Bell, appellee.

*James G. Gill,* for Charles G. Glaser, co-trustee, appellee.

*Bronte Greenwood,* for James G. Gill, counsel for trustees, appellees.

*William J. Wilson,* for Kensington National Bank, guardian, appellee.

*Nathaniel Speck* and *Clinton A. Sowers,* for Walter F. Hatley, co-trustee, appellee.

OPINION BY MR. JUSTICE DREW, March 24, 1947:

Louis Bell, a prospective purchaser, filed a petition in the Orphans' Court for a citation to show cause why the private sale of the real estate situated at 1064 North

2nd Street, Philadelphia, should not be set aside. Charles G. Glaser and Walter F. Hatley, Testamentary Trustees, acting under a power of sale contained in the will of Frank Reichert, deceased, made the conveyance to Ben and Rose Tizer. Bell alleged that fraud by the Tizers and the trustees prevented him from purchasing the property at a higher price. A citation was awarded directing respondents, the trustees, the Tizers, and also James G. Gill, Esq., who was counsel for one of the trustees, to show cause why the prayer of the petition should not be granted. The court dismissed the answers raising preliminary objections; ordered that Kensington National Bank, guardian of the minor beneficiaries of the trust, be made a party respondent, so that the interests of those beneficiaries be fully protected; and decreed that respondents answer on the merits.

After respondents answered on the merits and Bell filed a replication, Leo Weinrott, Esq., was appointed Master. To the latter's findings of fact, conclusions of law and recommendations the parties filed a total of eighty-three exceptions. After argument before the court en banc on these exceptions, a final decree was entered setting aside the sale and dismissing the citation against James G. Gill, Walter F. Hatley, Charles G. Glaser and the Kensington National Bank. This appeal by the Tizers followed.

At the hearing before the Master the following facts were established: "On September 5, 1944, the day following Labor Day, the trustees executed and delivered to one Simelsohn, a realtor and agent for the Tizers, both an agreement for the sale of premises 1064 N. 2nd Street and a Deed conveying the said premises to Benjamin and Rose Tizer, his wife, in consideration of the payment by several checks of an aggregate sum of $3500.00. The settlement was consummated in the offices of James G. Gill, attorney for the trustee, Glaser. There was no examination of title or title insurance.

At 9 a. m. on the morning of September 6, the next day, the deed was recorded.

"At the time that this sale was consummated the petitioner, Louis Bell, was also negotiating with Charles Glaser, one of the trustees for the purchase of the same property. Bell and the Tizers were bidding against each other. Within ten days before this sale, Bell had increased a previous $3,000. offer to $3,500. after the Tizers had matched his $3,000. offer and then offered $3,200. for the property. Bell was represented in the negotiations by a realtor named Benjamin Soffian and the Tizers were represented by Simelsohn, also a realtor.

"Bell and the Tizers were competitors in the retail linoleum business. Bell conducted a store at 1060 N. 2nd Street and the Tizers were the tenants in the estate's property at 1064 N. 2nd Street. Apparently Bell wanted this property in order to evict Tizer and thus stifle such competition as Tizer offered. The feud between the Tizers and Bell was apparently a bitter one and of long duration. Both of the trustees were acquainted with the differences between these merchants and they apparently favored their tenants, the Tizers. The estate of the decedent was in an excellent position to profit by this situation as the desire of these people to acquire this property was sufficiently strong to induce both to bid more than the market value that this property would have otherwise enjoyed.

"Unfortunately for the estate, the trustees did not reap the full benefit of this special market. Each of Bell's offers was submitted to the Tizers in order to give them an opportunity to bid further. But the Tizers' offer of $3,500. made on or about August 30th was not held under consideration long enough to enable Bell to raise it by the presentation of an agreement to pay $4,500. Bell's agent, Soffian, testified that he did offer $4,500. on August 31st by telephone and that he brought an agreement signed by Bell to pay this sum to Mr. Gill

on Tuesday, September 5th. During this period Mr. Gill held a deposit check of Bell, in the amount of $1,000. originally deposited on the $3,500. offer of August 30th. Mr. Gill denied receipt of this $4,500. agreement, but admitted closing with the Tizers at $3,500. on the fifth and making settlement in his own office simultaneously.

"On September 5th, Tizer's agent, Simelsohn, met with Mr. Glaser and Mr. Gill in Gill's office at about 1:30 in the afternoon. He procured a deed signed by Glaser and prepared by Mr. Gill. Simelsohn then took this deed to Mr. Hatley for his signature and finally obtained that signature about 5:30 p. m. on that day. During the same afternoon Simelsohn saw both Bell and his agent Soffian at Soffian's office by appointment. He pretended to act as a peacemaker in connection with the competition for this property and thereby succeeded in inducing Bell and Soffian to refrain from communicating with Mr. Gill that afternoon. At this meeting, Simelsohn concealed the fact that he was then concluding a settlement for the Tizers with the trustees.

"Bell contends that the sale to the Tizers was the result of a conspiracy between the trustees, attorney James G. Gill and the Tizers acting by their agent, Simelsohn. The trustees denied receipt of the $4,500. offer from Bell but conceded that they favored the Tizers. They were also concerned about the possibility of a settlement of the differences between the Tizers and Bell which would have had the effect of destroying the market for this property. Mr. Gill denied any wrongdoing in connection with his representation of Mr. Glaser."

The Tizers, appellants, maintain that it was error for the learned court below, on the basis of fraud, to grant a decree setting aside the conveyance and directing the trustees to reopen negotiations with all interested parties for the sale of the premises in order to obtain the highest price therefor, for the reason that

the conduct of Simelsohn, their agent, did not constitute fraud to the detriment of the estate; that the testimony of Soffian, agent of Bell, the disappointed bidder, as to Simelsohn's fraud, was not clear, satisfactory and credible; and that since the court below determined that the trustees were not guilty of fraud, it could not properly set aside the sale.

There is no merit in the contention that the conduct of Simelsohn did not constitute fraud. "As a general rule, fraud consists in anything calculated to deceive, whether by single act or combination, or by suppression of truth, or a suggestion of what is false, whether it be direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture. It is any artifice by which a person is deceived to his disadvantage": *Wiley v. Wirebelauer,* 116 N. J. 7q. 391, 174 A. 20, 23. In this connection, we said in *Thorne's Estate,* 344 Pa. 503, 511, 25 A. 2d 811: "The essence of fraud is deceit intentionally and successfully practiced to induce another to part with property or with some legal right. Fraud is practiced when deception of another to his damage is brought about by a misrepresentation of fact or by silence when good faith required expression." The Master found that Simelsohn, acting for appellants, lulled Bell into inaction by trick and artifice on September 5, 1944, and thus prevented the trustees from receiving a higher offer than $3,500.

The record clearly shows that Simelsohn deliberately arranged a meeting with Bell and Soffian the afternoon of September 5, 1944, at a time when he was making every effort to complete the sale and when he even had the partially executed deed in his possession. By deceit he led them to believe that the bidding would still be open for several days and thereby lulled them into inaction at a time when they otherwise would have communicated a higher bid to the trustees. The competitive bidding was stifled long enough for Simelsohn to have

the partially executed deed signed by Hatley, the other trustee. The Master aptly described his conduct: "This was a delicate maneuver requiring accurate timing, but Simelsohn managed it too well. He was clever in his dealings with the trustees, but he overreached himself and his principals, the Tizers, when he fraudulently induced Bell to refrain from communicating his offer to the trustees on the afternoon of September fifth. Simelsohn, acting for and with the approval of his employers, the Tizers, prevented this estate from receiving the benefit of Bell's higher offer." The haste in securing the signature of the trustees on the deed and in recording it at 9 o'clock the following morning, without having the title searched are suspicious circumstances that give additional weight to the other evidence of fraudulent conduct.

Nor is there any merit in the contention that the testimony of Soffian was not clear and credible. This requires but little discussion, for it is well settled that the credibility of the witness was for the Master. Appellate courts will not arbitrarily disregard the trier's right to pass on the credibility of the witnesses, and substitute its judgment for that of the fact-finder: *Milford Borough v. Burnett,* 288 Pa. 434, 136 A. 669. See also *Wesoky v. Jackson,* 70 Pa. Superior Ct. 281.

It is also argued that since the court below determined that the trustees were not guilty of fraud or collusion, it could not properly set aside the sale. With this contention we cannot agree, for the reason set forth in the opinion of the learned court below: "Whether the fraud was committed *by* the trustee, or *on* the trustees by the purchaser, the supervisory power of this court over the fiduciaries amenable to it, remains unimpaired." The inherent right of a court to set aside a contract for fraud is fundamental. Nor can the jurisdiction of the orphans' court be properly questioned. In this connection, we said, in *Kane v. Girard Trust Co.,* 351 Pa.

191, 193, 40 A. 2d 466: "The orphans' court has exclusive jurisdiction over all things pertaining to the settlement of decedents' estates: *Long's Estate*, 254 Pa. 370, 98 A. 1066. . . . We said, in *McCullough's Estate*, 292 Pa. 177, 183, 140 A. 865: 'That the supervisory power of the orphans' court extends as well to a sale under a power in a will as to one made under an order of court is undoubted.' "

Since the Master found that Simelsohn's conduct was fraudulent, and there was ample testimony to support such finding, his fraud is imputable to appellants, as principals. The failure of appellants, with full knowledge of the facts, to return the benefits secured by their agent's fraud is in itself a ratification of his fraudulent conduct: *Hughes v. First National Bank of Waynesburg*, 110 Pa. 428, 1 A. 417.

We are convinced that all assignments of error must be dismissed and that the decree of the court below was proper and must be sustained.

Decree affirmed.