J-A08022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DONNA JOHNSTONE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL RAFFAELE, ESQ., D/B/A | : | No. 2581 EDA 2019 |
| RAFFAELE & PUPPIO, LLP., RAFFALE | : | |
| & PUPPIO, LLP, ET AL., LANCE | : | |
| NELSON, ESQ., HARRY DONATO, | : | |
| ESQ., AND MACELREE HARVEY LTD. | : | |

Appeal from the Order Entered August 7, 2019,
in the Court of Common Pleas of Delaware County,
Civil Division at No(s): CV-2016-007941.

BEFORE: LAZARUS, J., KUNSELMAN, J., and McCAFFERY, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED OCTOBER 30, 2020**

Donna Johnstone appeals from two orders in her malpractice case against her divorce lawyer, Michael Raffaele and his law firm, Raffaele & Puppio, LLP (collectively Raffaele). The first order sustained Raffaele's preliminary objection to Johnstone's breach of contract claim based upon the gist of the action. The second order granted Raffaele's second motion for summary judgment on Johnstone's remaining tort claim based upon the expiration of the two-year statute of limitations. Upon review, we affirm in part and reverse in part.

The legal malpractice case stems from Raffaele's actions concerning a Property Settlement Agreement ("original PSA") between Johnstone and her ex-husband. Raffaele represented Johnstone, and negotiated an original PSA on her behalf. Notably, the original PSA, dated March 20, 2009, provided a warranty of disclosure of assets. An associated clause penalized a party for failing to disclose any asset exceeding $25,000.00 in value. If such an asset were discovered, that asset would be forfeited to the other party.

A few months after the original PSA was executed, Ms. Johnstone learned that her ex-husband possessed a previously undisclosed asset: a property allegedly worth approximately $4,000,000.00. This dispute was resolved by an additional distribution of assets to Johnstone and the execution of a Supplemental Property Settlement Agreement ("supplemental PSA") in November 2009, which Raffaele also negotiated. Allegedly Johnstone was unaware that this document contained terms which precluded her from seeking any additional distribution of assets should she discover any in the future, and further released Johnstone's ex-husband from any additional claims.

After the execution of the supplemental PSA, Johnstone discovered that her ex-husband had other significant assets that he had not disclosed. Johnstone contacted Raffaele to represent her to recover these additional assets, but he declined.

Johnstone obtained new counsel who sent a letter on May 9, 2011, to her ex-husband's counsel seeking to invoke the warranty and forfeiture

provisions in the original PSA. Opposing counsel indicated the language of the supplemental PSA superseded the relevant provisions of the original PSA, and consequently, Johnstone was precluded from pursuing any other assets.

Johnstone filed suit against her ex-husband on November 22, 2011. On April 17, 2013, Johnstone's ex-husband filed an amended answer, new matter, and counterclaim seeking damages for Johnstone's breach of the supplemental PSA. He claimed the supplemental PSA prohibited Johnstone from pursuing additional claims and filing suit.

On January 13, 2014, the trial court granted the ex-husband's motion for summary judgment on the basis that that the language of the supplemental PSA precluded any future claims; the court dismissed Johnstone's complaint. Thereafter, the ex-husband filed a motion for summary judgment on his counterclaim. On July 28, 2014, the court granted his motion and awarded him damages. Johnstone appealed both of those orders. This court affirmed the orders and denied reargument. *Johnstone v. Johnstone*, 2015 WL 7185893 (Pa. Super. 2015) (unpublished memorandum). Our Supreme Court denied *allocatur*. *Johnstone v. Johnstone*, 145 A.3d 727 (Pa. 2016).

On December 18, 2015, Johnstone initiated this lawsuit against Raffaele, claiming that Raffaele breached his contract with Johnstone and was negligent in failing to advise her that the supplemental PSA contained language that foreclosed any future claims against her ex-husband.

Raffaele filed a preliminary objection to Johnstone's breach of contract claim based upon the gist of the action doctrine. The trial court sustained this objection. The negligence claim proceeded.

Following discovery, Raffaele filed a motion for summary judgment, claiming that the two-year statute of limitations expired by the time Johnstone filed suit, and therefore, the trial court should enter judgment in favor of Raffaele. The trial court denied this motion, concluding that there were issues of material fact as to when Johnstone knew or should have known that she had been injured by her counsel's alleged malpractice.

Subsequently, Raffaele filed a second motion for summary judgment, claiming that when the ex-husband filed his answer, new matter and counterclaim in Johnstone's case seeking additional assets, as a matter of law, Johnstone was put on notice that the supplemental PSA language terminated her right to pursue any further claims against her ex-husband. He claims that this pleading gave Johnstone actual knowledge that her lawyer may have erred. The trial court agreed on the issue of notice and granted summary judgment, since Johnstone's suit against Raffaele was filed two years and eight months after the ex-husband filed his answer, new matter and counterclaim. Johnstone filed a motion for reconsideration which the trial court denied.

Johnstone filed this timely appeal.[1] She raises the following four issues:

1. Did a proper application of the "gist of the action" doctrine require the dismissal, on preliminary objection, of the legal malpractice claim alleged, under a contract theory, in Count II of Plaintiff's Second Amended Complaint?

2. Do the precepts underlying the "law of the case" doctrine preclude a trial court from addressing the merits of a defendant's motion for summary judgment on statute of limitations grounds, where the trial court had previously rejected the defendant's argument on a previous motion, and neither the facts nor the law had changed?

3. May a trial court enter summary judgment on the statute of limitations, when genuine issues of material fact exist regarding when the statute of limitations began to run?

Johnstone's Brief at 3.

## I.

In her first issue, Johnstone claims that the trial court erred in sustaining the preliminary objection to her breach of contract claim. Specifically, Johnstone argues that the trial court incorrectly applied the gist of the action doctrine; this doctrine only applies when the relationship between the parties is based on a contract, and a plaintiff tries to expand claims into tort. Johnstone's Brief at 28. Additionally, Johnstone argues that legal malpractice can be pled under both contract and tort theories, and that she properly pleaded both. *Id.* at 29-30. Therefore, Johnstone claims, the trial court

---

[1] The trial court did not order a Pennsylvania Rule of Appellate Procedure 1925(b) statement.

should have overruled Raffaele's preliminary objection on the contract claim. *Id.* at 35.

The trial court concluded that the factual bases for Johnstone's allegations against Raffaele sounded in tort because they related to Raffaele's core duties as Johnstone's attorney, rather than the general engagement for legal services. Therefore, the trial court sustained Raffaele's preliminary objection and dismissed without prejudice[2] Johnstone's contract claim, leaving only Johnstone's tort claim.[3] Trial Court Opinion, 11/22/19, at 7-8.

Our review of a challenge to a trial court's decision on preliminary objections is guided by the following:

> [o]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it

---

[2] Although the trial court gave Johnstone the opportunity to amend her complaint, she did not.

[3] This decision had significant consequences to Johnstone's case as this coupled with the trial court's entry of summary judgment put Johnstone out of court.

should be resolved in favor of overruling the preliminary objections.

***Feingold v. Hendrzak****,* 15 A.3d 937, 941 (Pa. Super. 2011) (citation omitted).

Under Pennsylvania law, a client may bring both a contract action and a tort action against a professional. A plaintiff pursuing a legal malpractice claim under a breach of contract theory, must plead and prove: (1) the existence of a contract, including its essential terms; (2) a **breach of a duty imposed by the contract**; and (3) resultant damages. ***See CoreStates Bank, N.A. v. Cutillo***, 723 A.2d 1053, 1058 (Pa. Super. 1999) (emphasis added).

With respect to a legal malpractice claim based on breach of contract, this Court has stated the following:

> [T]he attorney's liability must be assessed under the terms of the contract. Thus, if the attorney agrees to provide . . . her best efforts and fails to do so, an action in assumpsit will accrue. An attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large.

***Fiorentino v. Rapoport****,* 693 A.2d 208, 213 (Pa. Super. 1997) (citations omitted).

In contrast, a plaintiff in a negligence action for legal malpractice must establish three elements in order to recover: (1) the employment of the attorney or other basis for duty; (2) the *failure* of the attorney *to exercise ordinary skill and knowledge*; and (3) that the attorney's failure to exercise the requisite level of skill and knowledge was the proximate cause of damage

to the plaintiff. **Bailey v. Tucker**, 621 A.2d 108, 112 (Pa. 1993). *Accord* **McMahon v. Shea**, 688 A.2d 1179 (Pa. 1997); **Dougherty v. Pepper Hamilton LLP**, 133 A.3d 792, 796–97 (Pa. Super. 2016); **Fiorentino**, 693 A.2d at 212. An attorney will be deemed "negligent" if he or she fails to possess and exercise that degree of knowledge, skill and care which would normally be exercised by members of the profession under the same or similar circumstances. **Fiorentino supra**.

Generally, courts have been cautious about permitting tort recovery based on contractual breaches. In keeping with this principle, this Court often has applied the "gist of the action" doctrine to preclude a plaintiff from "re-casting ordinary breach of contract claims into tort claims." **Empire Trucking Co., Inc. v. Reading Anthracite Coal Co.**, 71 A.3d 923, 931 n. 2 (Pa. Super. 2013) (citation omitted). The gist of the action doctrine requires that:

> [A]n alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations.

**Bruno v. Erie Ins. Co.**, 106 A.3d 48, 53 (Pa. 2014). The gist of the action doctrine "ensure[s] that a party does not bring a tort claim for what is, in actuality, a claim for a breach of contract." **Id.** at 60.

However, "the mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one

- 8 -

for breach of contract." *Id.* at 69. Rather, the focus is on the nature of the duties that were allegedly breached. As the High Court stated in *Bruno*:

> [T]he nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint [is] of paramount importance, and, the mere labeling by the plaintiff of a claim . . . is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.
>
> * * *
>
> Consequently, a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract. Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.

*Id.* 106 A.3d at 68-70.

Thus, contrary to Johnstone's argument, the gist of the action doctrine is not limited to ensuring only that a contract action is not recast as a tort. Instead, the doctrine seeks to determine the true nature of any action. "The 'gist of the action' test is a general test concerned with the 'essential ground,' foundation, or material part of an entire 'formal complaint' or lawsuit." ***Hart***

***v. Arnold*** , 884 A.2d 316, 340 (Pa. Super. 2005). The purpose of the gist of the action doctrine has been to properly classify the nature of the action set forth in a plaintiff's complaint.

Notably, the gist of the action doctrine was first applied almost 200 years ago in the seminal case of ***Zell v. Arnold***, 2 Pen. & W. 292, 1830 WL 3261 (Pa. 1830). There, our Supreme Court applied the gist of the action doctrine to determine whether the trial court had jurisdiction to award costs, which it could not do if the matter was an action in assumpsit, *i.e.*, breach of contract. It concluded that the action did not arise from a failure to perform, but rather a failure to perform in a workmanly manner--a tort, even though there was a contract between the parties. ***Id.*** at 3. Thereafter, the High Court employed the gist of the action doctrine to differentiate between contract and tort actions for other purposes as well. The Court looked to the nature of the duty allegedly breached as the basis for classifying the cause of action at issue. ***Id.*** at 63.

More recently, this Court has applied the gist of the action doctrine to bar contract claims when the action in really in the nature of a tort. ***See i.e.***, ***Tillman v. Wise***, 2020 WL 1846768 (Pa. Super. 2020) (unpublished memorandum) (applying the gist of the action doctrine and concluding that claim sounded in tort and not breach of contract where complaint did not allege that contractor failed to install flooring but that installation was defective); ***Meksin v. Glassman*** 2019 WL 2183809 (Pa. Super. 2019) (unpublished memorandum) (determining true nature of the allegations in

action for legal malpractice and concluding that, although plaintiff had cast claim as of breach of contract, allegations related to attorney's exercise of care and professional judgment rather than compliance with agreement for legal services, which required a certificate of merit); **Seidner v. Finkleman**, 2018 WL 4178147 (Pa. Super. 2018) (unpublished memorandum) (applying gist of action doctrine and concluding breach of contract could not be sustained where allegations that attorney failed to exercise ordinary skill and knowledge in excluding insurance as marital assets sounded in tort); **Julia v. Cerato** , 2015 WL 7573074 (Pa. Super. 2015) (unpublished memorandum) (applying gist of action and concluding that executrix' claim for failed legacy was precluded where allegations against attorney for malpractice for failure to ascertain the nature of decedent's assets and manner of ownership sounded in tort even though allegations in complaint were cast as breach of contract). As these cases indicate, the gist of the action doctrine can be applied to dismiss contract claims, while allowing the tort claims to proceed.

As our precedent provides, we must examine the allegations of Johnstone's amended complaint to ascertain the true nature, or the "gist," of her action. In her amended complaint for breach of contract, Johnstone alleged that Raffaele breached their fee agreement and other agreements by failing to: read, review and understand the terms of the supplemental PSA; explain the terms of the agreement to Johnstone; appropriately advise Johnstone regarding the effects of the supplemental PSA and advise her not to sign it as it was detrimental to her rights; negotiate a fair and equitable

SPSA for her; ensure the forfeiture clause in the original agreement remained in effect and negotiate removal of the waiver clause; protect Johnstone's interest while negotiating and advising her about the SPSA; and appropriately communicate with Johnstone. Johnstone did not allege that Raffaele failed to follow her instructions or failed to perform any specific executory promise in their agreement(s). Johnstone also did not quote any particular provision of the agreement that Raffaele failed to perform. Additionally, Johnstone did not attach a copy of the agreement between her and Raffaele to her amended complaint, a requirement for a breach of contract claim. *See* Pa.R.C.P 1019(i).

Notably, in her negligence count, Johnstone made similar averments of breach of duty. Johnstone's allegations focused on the manner in which Raffaele conducted himself and performed his duties as her attorney: his communication with his client; the advice given; and the diligence in preparing to represent her. These allegations plainly sound in negligence rather than breach of contract. The general allegations under Johnstone's "breach of contract" count do not arise from the breach of any specific terms of the agreement between Johnstone and Raffaele for legal services. Instead, they arise from Raffaele's alleged negligent preparation of the supplemental PSA and Raffaele's overall exercise of care and professional judgment in handling Johnstone's case.

Thus, based upon our review of Johnstone's amended complaint, we conclude that the trial court did not commit an error of law in sustaining Raffaele's preliminary objection to Johnstone's breach of contract claim.[4]

## II.

In her second issue, Johnstone argues that the trial court erred in considering Raffaele's second motion for summary judgment. Specifically, she claims that the trial court violated the law of the case doctrine. The trial court previously denied a motion for summary judgment to dismiss her tort claim based on the statute of limitations. The trial court determined that there were

---

[4] Johnstone's citation to **Gorski v. Smith**, 812 A.2d 683 (Pa. Super. 2002) *appeal denied*, 856 A.2d 834 (Pa. 2004) does not change this conclusion. There, this Court stated that:

> that every contract for legal services contains, as an implied term of the contract, a promise by the attorney to render legal services in accordance with the profession at large. Thus, when an attorney enters into a contract to provide legal services, there automatically arises a contractual duty on the part of the attorney to render those legal services in a manner that comports with the profession at large. Hence, a breach of contract claim may properly be premised on an attorney's failure to fulfill his or her contractual duty to provide the agreed upon legal services in a manner consistent with the profession at large.

**Gorski**, at 694 (citing **Bailey**, 621 A.2d at 115). The Court went on to hold that to demonstrate this was sufficient to establish a breach of contract and that it was not necessary that the plaintiff show that the attorney failed to follow a specific instruction. **Id.** at 697. Significantly, we observe that the gist of the action doctrine was not involved in **Gorski**. Additionally, as stated in **Bruno**, a contract claim arises from the promise to do something specific that is not otherwise generally required of an attorney. **See Bruno supra**. We therefore question the continued validity of **Gorski**.

- 13 -

issues of material fact as to when Johnstone knew or should have known that she was injured and by whom, thereby precluding summary judgment. When the trial court reconsidered the same issue on the same facts and legal principles and reached a different conclusion, according to Johnstone, the trial court violated the law of the case doctrine. Johnstone's Brief at 35.

Generally, the law of the case doctrine prohibits courts from reopening what has been decided previously by another judge. "[A] court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Ario v. Reliance Ins. Co.*, 980 A.2d 588, 597 (Pa. 2009) (citing *Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326, 1331 (1995)). However, a trial judge may always revisit his or her own prior pre-trial rulings in a case without conflicting with the law of the case doctrine. *See In re Estate of Elkins,* 32 A.3d 768, 777 (Pa. Super. 2011) (citation omitted), *appeal denied,* 618 Pa. 688, 57 A.3d 71 (2012); *see also BuyFigure.com, Inc. v. Autotrader.com, Inc.,* 76 A.3d 554, 558–59 (Pa. Super. 2013) (noting that "[a] trial court has the inherent power to reconsider its own rulings"), *appeal denied,* 84 A.3d 1061 (Pa. 2014).

Here, we conclude that the trial court's grant of Raffaele's second motion for summary judgment did not violate the law of the case doctrine. The *same* trial court judge ruled on both of Raffaele's summary judgment motions. Because the law of the case doctrine does not prohibit the same trial court judge from revisiting his or her prior rulings, we conclude that the trial court

in this case did not abuse its discretion in considering Raffaele's second motion for summary judgment. *See Morgan v. Petroleum Prod. Equip. Co.*, 92 A.3d 823, 827 (Pa. Super. 2014).

## III.

In her third issue, Johnstone contends that the trial court erred in entering summary judgment based upon the statute of limitations. According to Johnstone, the trial court wrongly employed the discovery rule to grant summary judgment as a matter of law. Johnstone claims issues of material fact existed as to whether the statute of limitations applied, namely, when Johnstone had notice of, and whether she exercised reasonable diligence in discovering Raffaele's alleged malpractice. Johnstone's Brief at 42, 44, 47.

The trial court concluded that the statute of limitations barred Johnstone's negligence claim. As a matter of law, it concluded that Johnstone knew or should have known of Raffaele's alleged malpractice when her ex-husband filed his amended answer, new matter and counterclaim on April 17, 2013 in her action to obtain additional assets under the original PSA. The court held that the statute of limitations began to run on that date. Because Johnstone filed her lawsuit against Raffaele more than two years later, the trial court entered summary judgment in Raffaele's favor. Trial Court Opinion, 11/22/19, at 16.

When reviewing an order granting summary judgment, our standard of review is *de novo*, and our scope of review is plenary. *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009).

- 15 -

The entry of summary judgment is [only] proper whenever no genuine issue of any material fact exists as to a necessary element of the cause of action. The moving party's right to summary judgment must be clear and free from doubt. We examine the record, which consists of all pleadings, as well as any depositions, answers to interrogatories, admissions, affidavits, and expert reports, in a light most favorable to the non-moving party, and we resolve all doubts as to the existence of a genuine issue of material fact against the moving party.

*Id.* (citations omitted).

The statute of limitations for a legal malpractice claim sounding in tort is two years. 42 Pa.C.S.A. § 5524(7). In Pennsylvania, the statute of limitations begins to run in a legal malpractice action on the date of the occurrence.

Under the occurrence rule, the statutory period commences upon the happening of the alleged breach of duty. An exception to this rule is the equitable discovery rule which will be applied when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause. *Pocono [International] Raceway v. Pocono Produce, Inc.*, 503 Pa. 80, 85, 468 A.2d 468, 471 (1983). Lack of knowledge, mistake or misunderstanding, will not toll the running of the statute. *Id.* 503 Pa. at 85, 468 A.2d at 471.

Pennsylvania favors strict application of the statutes of limitation. Accordingly, the statute of limitations in a legal malpractice claim begins to run when the attorney breaches his or her duty, and is tolled only when the client, despite the exercise of due diligence, cannot discover the injury or its cause.

*Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 572–73 (Pa. Super. 2007) (emphasis omitted; some citations omitted).

Although the date of the breach starts the statutory time period, the discovery rule may delay the running of the clock "until such time as the

- 16 -

plaintiff knows or should have known (1) of the injury and (2) that the defendant's conduct was the cause of that injury." ***Fine v. Checcio***, 870 A.2d 850, 857 (Pa. 2005). The discovery rule arises from "the inability of the injured [person], despite the exercise of reasonable diligence, to know that [she] is injured and by what cause ...." ***Id.*** at 858.

Under Pennsylvania law, a jury typically decides whether a plaintiff has exercised reasonable diligence in investigating who caused her harm. ***Id.***; s***ee also Nicolaou v. Martin***, 195 A.3d 880, 893 (Pa. 2018). A plaintiff must convince the jurors she exercised reasonable diligence in investigating a cause of action and, despite that diligence, could not have reasonably discovered either (1) that she suffered an injury or (2) that the defendant's conduct caused her injury.

The ***Fine*** Court described reasonable diligence as:

> what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised ... there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful .... [T]he question in any given case is ... what might he have known, by the use of the means of information within his reach, with the vigilance the law requires of him? While reasonable diligence is an objective test, it is sufficiently flexible ... to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question .... [O]rdinarily, a jury is to decide [this question].

***Fine***, 870 A.2d at 858-859 (citations and some punctuation omitted).

Nevertheless, "courts may [apply the discovery rule] at the summary judgment stage where "reasonable minds could not differ" in finding when a

party knew, or should have known upon the exercise of reasonable diligence, of his injury and its cause. ***Id.***; ***Wilson v. El-Daief***, 964 A.2d 354, 362 (Pa. 2009). "However, courts may not view facts in a vacuum when determining whether a plaintiff has exercised the requisite diligence as a matter of law, but must consider what a reasonable person would have known had he or she been confronted with the same circumstances as the plaintiff faced at the time." ***See Nicolaou***, 195 A.3d at 894.

Here, the alleged breach of duty occurred on November 23, 2009, when Johnstone executed the supplemental PSA which prohibited her from pursuing any further claims against her ex-husband for his non-disclosure of marital assets. Her cause of action accrued on this date, and the two-year statute of limitations for a negligence claim began to run. Under the occurrence rule, Johnstone's negligence action clearly would have been barred by the two-year statute of limitations, since she did not file her lawsuit against Raffaele until December 8, 2015. However, Johnstone claims the discovery rule applies to her case. She alleges that she was unaware that she had been injured until much later, and therefore the statute of limitations should be tolled. Viewing the evidence in a light most favorable to Johnstone as the non-moving party, any doubt on this issue must be resolved in her favor on summary judgment.

Thus, the issue is when did Johnstone actually discover or should have discovered her injury and its cause, thereby recommencing the running of the statute of limitations. Johnstone claimed that, although she was aware of a potential injury when her ex-husband denied she was entitled to the additional

undisclosed assets, she was not aware of the cause of any injury until the judge in the underlying action ruled on ex-husband's motion for summary judgment on January 13, 2015. Raffaele, on the other hand, argued that Johnstone knew or should have known of Raffaele's alleged negligence when her ex-husband filed his amended answer, new-matter and counterclaim against her on April 17, 2013.

As discussed above, resolution of these issues is typically reserved for the finder of fact unless "reasonable minds would not differ." Here, the trial court concluded that "***a reasonable argument could be made*** that the statute began to run upon the filing of the Answer, New Matter and Counterclaim by [husband's] defense counsel [in the underlying] case—a filing which plainly outlined the position that Ms. Johnstone had waived and released any additional claim of any kind by executing the [supplemental PSA]." Trial Court Opinion, 11/22/19, at 17 (emphasis added). In reaching this conclusion, the trial court did not apply the correct standard, *i.e.*, that "reasonable minds would not differ." Under the court's standard, another a reasonable argument could be made that Johnstone did not know of Raffaele's alleged malpractice until the court's decision in the underlying case.

Rather than providing certainty regarding Johnstone's knowledge, the court's statement "a reasonable argument could be made" presumes too much. While this statement may have been a result of inartful drafting, the trial court's conclusion was critical, particularly given that the application of the discovery rule is generally a question for the jury. ***See Nicolaou***, 195

A.3d at 894. Thus, the trial court erred in granting summary judgment on the basis that a "reasonable argument could be made" that Johnstone knew of the alleged malpractice on April 17, 2013.

Additionally, other issues of material fact precluded the trial court from entering summary judgment. Until her second lawsuit seeking additional assets from her ex-husband was dismissed by the trial court, Johnstone continued to believe that the original PSA's Forfeiture Clause was still valid. She further thought that her inability to pursue those assets was caused by the actions and/or omissions of her ex-husband, who failed to disclose those marital assets during the divorce litigation, and who refused to honor the forfeiture remedy provided in the original PSA. When Raffaele would not assist her to retrieve these assets, Johnstone sought legal advice from three attorneys. Their advice was consistent with Raffaele's representation to Johnstone that he inserted language in the final version of the supplemental PSA to ensure that all prior documents, particularly the original PSA with its Forfeiture Clause, remained in full force and effect as when she originally settled the divorce matter.

The trial court summarily dismissed Johnstone's reasons offered to explain why she was unaware of Raffaele's malpractice until the date the trial judge ruled on her underlying lawsuit. Trial Court Opinion, 11/22/19, at 17. In doing so, the court viewed the facts of this case in a vacuum, rather than considering what a reasonable person would have known had he or she been confronted with the same circumstances as Johnstone. ***See Nicolaou supra***.

When viewing the evidence properly, *under the circumstances of this case*, it is uncertain when Johnstone knew, or should have known, of the cause of her injury.

Furthermore, the trial court's reliance on **Wachovia** to conclude, as a matter of law, that Johnstone knew of Raffaele's malpractice when her ex-husband responded to her complaint in the underlying litigation is misplaced. There, Wachovia's attorney failed to mark a judgment satisfied for one of its customers as required under the parties' agreement. As a result, Wachovia's customer instituted suit against it for liquidated damages. This Court concluded that Wachovia was put on notice that its attorney had breached its duty of care when the lawsuit for liquidated damages was filed, rather than when the appeals in that case were finally decided. Unlike in this case, when the customer filed suit, it became evident to Wachovia that its attorney did not do as instructed and may have caused an injury to Wachovia. Significantly, Wachovia admitted it was aware of the attorney's breach of duty in failing to mark the judgment satisfied. That case involved a clear incident of the attorney's failure perform, a fact undisputed by Wachovia and for which Wachovia had actual notice. **Wachovia**, 935 A.2d at 574 n.3. These circumstances differ significantly from those of the instant case.

This matter is more akin to **Garcia v. Community Legal Servs. Corp.**, 524 A.2d 980 (Pa. Super. 1987). There, Legal Services filed suit on behalf of Garcia for damage done to Garcia's property during demolition of the neighboring property. In that case, a legal issue existed as to whether a two

year or four year statute of limitations applied to Garcia's trespass action. Ultimately, the judge in the trespass action determined that the shorter statute of limitations applied and that Garcia's trespass complaint was untimely. Garcia then filed a malpractice action against Legal Services for not timely filing her complaint in the trespass action. Legal Services claimed that the malpractice action was barred by the statute of limitations. This Court concluded, *inter alia*, that Garcia could not have been aware that her trespass action was barred until the trial court made its ruling. The statute of limitations issues was unclear to even an experienced attorney. Therefore, it would be completely unreasonable to expect a layperson to possess that knowledge. We stated: "Resolving all factual questions in her favor, we find that [Garcia] was reasonably unable to learn of her injury until the court notified her that her [underlying] suit was dismissed." **Id.** at 495. Once that occurred, Garcia then became aware of the injury and its purported cause.[5] **Id.** at 496.

Similarly, here there was a question as to whether the language of supplemental PSA precluded Johnstone from pursuing any additional claims against her ex-husband, or whether other language therein preserved her rights under the original PSA. As this was disputed, the court had to interpret the language of the relevant documents. Until the trial court ruled on the

---

[5] Nonetheless, Garcia's malpractice claim was barred because she filed her action against Legal Services two years and seven days after the trial court's decision in the trespass action, as the court further concluded the pendency of an appeal does not toll the running of the statute in Pennsylvania.

issue, Johnstone may not have been aware of the injury or the cause of it. This is particularly so given that experienced lawyers disagreed on whether the language of the supplemental PSA precluded application of the warranty of disclosure language in the original PSA. Thus, the determination of when Johnstone reasonably should have been aware of the cause of her injury should have been deferred to the finder of fact. Instead, the trial court impermissibly decided these factual issues, which it may not do. *See Fine*, 870 A.2d at 862; *Nicolaou*, 195 A.3d at 894–895. We, therefore, conclude that the trial court erred in granting summary judgment.

Lastly, Johnstone argues that the trial court should have estopped Raffaele from raising the statute of limitations as a defense because Johnstone asserted facts to support that Raffaele acted to conceal his malpractice from Johnstone. Johnstone's Brief at 44. According to Johnstone, at the very least, issues of material fact regarding Raffaele's actions and whether they affected Johnstone's discovery of his alleged malpractice exist for the factfinder. *Id.*

The doctrine of fraudulent concealment serves to toll the running of the statute of limitations. "The doctrine is based on a theory of estoppel, and provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." *Fine*, 870 A.2d at 860. The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception. *Id.* The plaintiff has the burden of proving

fraudulent concealment by clear, precise, and convincing evidence. *Id.* While it is for the court to determine whether an estoppel results from established facts, it is for the jury to resolve any dispute as to what those facts may be. *Id.*

However, fraudulent concealment will not toll the statute of limitations forever.

> [T]he standard of reasonable diligence, which is applied to the running of the statute of limitations when tolled under the discovery rule, also should apply when tolling takes place under the doctrine of fraudulent concealment . . . . Thus, we conclude that a statute of limitations that is tolled by virtue of fraudulent concealment begins to run when the injured party knows or reasonably should know of his injury and its cause.

*Id.* at 861.

A defendant must have committed an affirmative, independent act of concealment upon which the plaintiff justifiably relied for the doctrine of fraudulent concealment to apply. *See Kingston Coal Co. v. Felton Mining Co. Inc.*, 690 A.2d 284, 291 (Pa. Super. 1997). Also, "mere silence *in the absence of a duty to speak* cannot suffice to prove fraudulent concealment." *Lange v. Burd*, 800 A.2d 336 (Pa. Super. 2002) (emphasis added). The converse of such a statement is also correct, because fraud may be "brought about by ... silence when good faith required expression." *In re Reichert's Estate*, 356 Pa. 269, 51 A.2d 615, 617–618 (1947).

We first note that contrary to Johnstone's claim, fraudulent concealment does not serve as a total bar to the statute of limitations defense, but serves

to toll the statute of limitations, like the discovery rule. *Fine*, 870 A.2d at 860. Once the injured party learns of his injury and its cause, the statute begins to run again. *Id.* at 861.

Here, however, there are material issues of fact as to whether any fraudulent concealment by Raffaele tolled the statute of limitations. Johnstone has raised facts that if proven could lead a jury to infer that Raffaele's concealment of his negligent actions, caused her to relax her vigilance or deviate from her right of inquiry. For example, Johnstone claims that Raffaele agreed to review letters drafted by Johnstone's new counsel and those received from husband's counsel, but he did not; Raffaele ignored Johnstone's calls; Raffaele failed to return Johnstone's file for 14 months; Raffaele declined to represent Johnstone in pursuing the other undisclosed assets but did not explain why. Raffaele's Brief at 44-45. If Raffaele's alleged acts of concealment prevented Johnstone from learning of her injury, the statute of limitations may have been tolled. As discussed above, the statute of limitations would begin to run once Johnstone knew of or should have known of the cause of her injury. Until these factual issues are resolved by the finder of fact, the trial court could not determine when the statute of limitations began to run, and thus whether Johnstone timely filed her lawsuit. For this additional reason, the trial court erred in granting summary judgment.

In conclusion, we find that the trial court did not err in sustaining Raffaele's preliminary objection based on the gist of the action doctrine and dismissing Johnstone's breach of contract claim. Further, the trial court

properly considered Raffaele's second motion for summary judgment, but in so doing, erred in granting summary judgment in favor of Raffaele based on the statute of limitations.

Order sustaining preliminary objection affirmed; order granting summary judgment reversed.

Judgment Entered.



Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/30/20